**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| GEORGE JONES, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| AMERICAN HONDA MOTOR, CO., INC., a corporation, | |
| Defendant. | |

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

JURISDICTION AND VENUE ..............................................................................................3

PARTIES .................................................................................................................................3

    A.    Plaintiff ........................................................................................................3

    B.    Defendant ....................................................................................................6

SUBSTANTIVE ALLEGATIONS .........................................................................................8

    A.    Touting the quality and reliability of its vehicles, Honda becomes dominant in the U.S. auto market..................................................................................................................8

    B.    A vehicle that is prone to parasitic draining creates an unreasonable risk of failure of mandated safety features and engine stalls. ..............................................................12

    C.    Defendant sold over two million Class Vehicles suffering from the parasitic draw Defect...................................................................................................................15

    D.    Plaintiff's Class Vehicle suffers from the parasitic draw Defect, which Honda is unable to fix, causing Plaintiff to suffer significant injuries. .........................................28

    E.    Honda knew that the Class Vehicles suffered from the Defect prior to its sale of the Class Vehicles............................................................................................................29

    F.    Honda acknowledges to its dealers that the Class Vehicles suffer from the Defect by issuing Service Bulletins, which it knew did not remedy the Defect. ......................................38

    G.    Honda breached the express warranties covering the Class Vehicles............................44

FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS ...........................................45

TOLLING OF STATUTES OF LIMITATIONS .......................................................................47

    A.    Discovery Rule ...........................................................................................47

    B.    Fraudulent Concealment ...............................................................................48

CLASS ALLEGATIONS ........................................................................................................49

CAUSES OF ACTION ............................................................................................................52

    VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT .................52

    VIOLATION OF THE CALIFORNIA UNFAIR BUSINESS PRACTICES ACT .................54

    BREACH OF EXPRESS WARRANTY (Based on California law).......................................57

    BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ....................................59

    UNJUST ENRICHMENT .................................................................................62

BREACH OF EXPRESS WARRANTY (Based on Iowa law)..................................................63

VIOLATIONS OF THE IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER
FRAUDS ACT...................................................................................................................64

REQUEST FOR RELIEF ............................................................................................................66

DEMAND FOR JURY TRIAL ...................................................................................................66

Plaintiff George Jones ("Plaintiff"), individually and on behalf of all those similarly situated, complains of Defendant American Honda Motor Company, Inc. ("Honda"), based upon his personal knowledge as to facts specific to him and based upon the investigation of counsel in all other respects, as follows:

## INTRODUCTION

1.      Honda has become one of the most popular automobile brands in the United States based on its pervasive marketing message that its vehicles are manufactured with the utmost care, of the highest quality, and, most importantly, dependable. But for years Honda has failed to disclose that millions of Class Vehicles[1] suffer from a defect which results in the failure of the vehicles' essential purpose: safely transport persons from point A to point B.

2.      Modern automobiles are useless without a functioning 12-volt battery. Although a car's engine and wheels keep it moving down the road, without a working battery the car is stuck in the garage. Batteries serve the critical function of providing power to a vehicle's sparkplugs and starter so that the engine can turn-over and start.  Batteries are also necessary to provide continuous power to federally mandated safety features (such as hazard lights and electronic control modules) when the engine is off. [2]

3.      Each Class Vehicle suffers from a defect known as parasitic draining. Parasitic draining occurs when electrical components in a vehicle fail to shut down once the vehicle is parked and turned off, which in turn allows the components to continue consuming power from the battery (referred to herein as the "Defect."). Left unrepaired, parasitic draining results in the premature obsolescence of the vehicle's battery and a host of component failures.

4.      What makes the parasitic draw Defect a safety concern is that the damage it causes manifests without warning, creates the risk of vehicles stopping while being driven, and causes federally mandated safety features such as emergency hazard lights and headlights to fail.

---

[1] The Class Vehicles are Honda CR-V (model years 2017-2019) and Honda Accord (model years 2016-2019).
[2] *See* 49 C.F.R. § 571.108.

Prolonged and recurrent battery depletion results in the overuse of the vehicle's alternator (which is used to replenish the battery when the engine is on) and can cause the vehicle's engine to stall.

5.      The Defect also leaves drivers stranded and unable to start their vehicles. Indeed, owners have complained that the Defect has caused them to miss medical appointments and left them stranded in the middle of the night in airport parking lots.

6.      As a result of the Defect, Class Vehicle owners are stuck paying hundreds or thousands of dollars in replacement batteries and repairs. But even after incurring these expenses the Defect remains present. Replacing batteries and other components which degrade as a result of the Defect are just band-aids and the replacement components will ultimately fail as well.

7.      Prior to the first sale of a Class Vehicle, Honda was aware that the Class Vehicles suffered from the parasitic draw Defect. And although Honda has issued internal Service Bulletins to its authorized dealerships about the Defect found in the Class Vehicles, it has yet to offer a reliable solution to the Defect or recall the Class Vehicles. Instead, Honda merely instructed its dealers to update internal software and replace dead batteries in certain Class Vehicles, if necessary. But Honda already knows that neither "corrective action" remedies the parasitic draw Defect nor makes the vehicles any more dependable for their owners.

8.      Had Plaintiff and other Class Members known of the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

9.      As a result of Defendant's breaches of warranties, and unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendant caused Plaintiff and the members of the Class damages, including but not limited to, loss of value, loss of use of the vehicles, and battery replacement and other repair costs.

10.     Accordingly, Plaintiff brings this action to redress Defendant's misconduct. Plaintiff seeks recovery of damages and a repair under state consumer-protection statutes and

applicable express and implied warranties, and reimbursement of all expenses associated with the repair or replacement of the Class Vehicle.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.

12.    Subject matter jurisdiction is also proper in this Court has supplemental subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

13.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant transacts substantial business and because Plaintiff purchased the vehicle at issue in this district. Defendant advertised in this District and received substantial revenue and profits from sales and/or leases of the Class Vehicles in this district. Therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

14.    This Court has personal jurisdiction over Defendant by virtue of its transactions and business conducted in this judicial district. Defendant has transacted and done business, and violated statutory and common law, in the State of Iowa and in this judicial district.

## PARTIES

### A.  Plaintiff

15.    Plaintiff George Jones is a citizen of Iowa and resides in Lamoni, Iowa. Plaintiff purchased a new 2019 Honda CR-V, VIN Number: 7FARW2H5XKE005457 from Smart Honda, located at 11206 Hickman Rd, Clive, Iowa, on February 22, 2019.

16.    Smart Honda is part of Honda's network of authorized dealers across the United States. Honda promotes Smart Honda on its website and lists Smart Honda's inventory of Honda

vehicles on its website:[3]



17.    When shopping for his Class Vehicle Plaintiff researched and considered the reliability and quality of the make and manufacturer, including Honda's warranty department. Plaintiff frequently travels for work and to visit family out of state, so the ability to park his vehicle for a week at a time without the need to call a tow truck or jump-start the vehicle, among other things, was integral to his decision to purchase a Class Vehicle.

18.    Prior to purchasing his Class Vehicle, Plaintiff reviewed Honda's promotional materials on the internet and at Smart Honda, the Monroney sticker, and sales brochures, and interacted with Honda sales agents at Smart Honda—each of which failed to disclose the presence

---

[3] https://automobiles.honda.com/tools/inventory-model?DealerID=208518&zipCode=?source=https%3a%2f%2fautomobiles.honda.com%2ftools%2finventory-results%3fDealerId%3d208518&statusCode=302 (last accessed May 13, 2021); https://automobiles.honda.com/tools/dealership-locator (last accessed May 13, 2021).

of the Defect in 2019 Honda CR-V models. Plaintiff specifically questioned Honda's sales agent regarding the dependability of the Class Vehicle and was told that the CR-V has been in Honda's line of vehicles for many years, was well tested, and reliable. Plaintiff also reviewed Honda's New Vehicle Limited Warranty, and discussed all applicable written express warranties with Honda sale agents.

19.     Through his exposure and interaction with Honda, Plaintiff was aware of Honda's uniform and nationwide marketing message that its vehicles are safe and dependable, which was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed, based on Honda's marketing message, that he would be in a safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff purchased his vehicle did Honda disclose to him that his vehicle was not safe or dependable, or that it suffered from the parasitic draw Defect, which creates safety risks and renders the vehicle useless.

20.     Plaintiff purchased his Class Vehicle with the parasitic draw Defect as part of a transaction in which Honda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The parasitic draw Defect has significantly diminished the value of Plaintiff's Class Vehicle.

21.     Had Honda disclosed the Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

22.     Plaintiff would purchase a Honda from Honda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

**B. Defendant**

23.    Defendant American Honda Motor Company, Inc. is incorporated in California with its principal place of business in Torrance, California.

24.    Honda is the wholly owned North American subsidiary of Honda Motor Company Limited ("HML"), a Japanese corporation. Honda began operations in 1959 and is now responsible for "[s]ales, marketing, service, distribution, import and export of Honda and Acura products in the U.S."[4]

25.    Honda is a holding company of sales, manufacturing, engineering, design, and research and development strategies of HML in the United States. Honda is in the business of designing, engineering, testing, validating, manufacturing, distributing, marketing, selling, and servicing Honda and Acura branded vehicles in the United States through its hundreds of dealerships.

26.    At its Torrance headquarters, Honda combines product sales, service, and coordinating functions for HML in North America, and is responsible for the manufacture, development, distribution, marketing, sales, and servicing of Honda vehicles. The decisions regarding the marketing and sale of the Class Vehicles, the development of the internal Service Bulletins relating to the parasitic draw Defect in the Class Vehicles, and decisions regarding the disclosure or non-disclosure of the Defect were in whole or substantial part made by Honda at its Torrance headquarters. For example, in addition to Honda's C-Suite, Honda's Vice President of Marketing & Customer Experience (responsible for "overseeing marketing and public relations for both the Honda and Acura automobile brands as well as the company's customer experience initiatives"),[5] Assistant Vice President of Honda's Marketing Division (responsible for "leading the company's marketing efforts for both the Honda and Acura automobile brands"),[6] Vice

---

[4] Available at https://hondanews.com/en-US/honda-corporate/releases/release-554e3d8539c7f6db3b88b571930280ab-honda-2020-digital-factbook (last accessed May 13, 2021).

[5] https://hondanews.com/en-US/releases/jay-joseph-bio (last accessed May 13, 2021).

[6] https://hondanews.com/en-US/releases/ed-beadle (last accessed May 13, 2021).

President of the Automobile Sales Strategy Division (responsible for Honda's "market representation, sales and production planning, certified pre-owned sales, dealer communication, product and sales information, as well as export sales and distribution.");[7] Vice President of the Product Regulatory Office (responsible for "overseeing the U.S. regulatory compliance activities for all automobile…products, including the areas of product safety, environmental strategy, and energy reporting and compliance");[8] the Division Head of Product Safety (responsible for responsible for automobile "product safety, including compliance with the [TREAD] Act [49 U.S.C. § 30118]," "compliance with government regulations," and managing "Honda's relationship with U.S. government agencies, including the National Highway Traffic Safety Administration [("NHTSA")]… on matters related to incident reporting, safety investigations, and product recall management");[9] and Honda's Manager of Auto Campaigns and Recalls (responsible for communicating with Honda dealerships concerning potential defects in Honda vehicles and overseeing internal investigations)[10] are each based in Torrance.

27.     Additionally, Honda's warranty and customer service departments for Honda vehicle owners and lessees are operated from the Torrance headquarters.[11]

28.     Honda is a sister company of Honda Development & Manufacturing of America, LLC ("HDMA") and Honda R&D Americas, LLC ("HRA"), which operate 19 major manufacturing plants in North America and 14 major research and development centers in North

---

[7] https://hondanews.com/en-US/releases/steven-center (last accessed May 13, 2021).
[8] https://hondanews.com/en-US/releases/jenny-gilger-bio (last accessed May 13, 2021).
[9] https://www.linkedin.com/in/jeff-chang-2a0195107/ (last accessed May 13, 2021).
[10] https://www.linkedin.com/in/brad-ortloff-7210039a/ (last accessed May 13, 2021); *see also* https://static.nhtsa.gov/odi/tsbs/2019/MC-10156621-0001.pdf (last accessed May 13, 2021).
[11] *See* https://automobiles.honda.com/information/customer-relations#:~:text=Call%201%2D866%2D864%2D5211 (last accessed May 13, 2021); https://direct.automobiles.honda.com/information/customer-relations.aspx (last accessed May 13, 2021).

America which jointly fully design, develop and engineer many of the products the company makes in North America.[12]

29.    In 2019, more than 90 percent of the Honda and Acura automobiles sold in the U.S. were produced in North America.[13]

## SUBSTANTIVE ALLEGATIONS

**A.  Touting the quality and reliability of its vehicles, Honda becomes dominant in the U.S. auto market.**

30.    Today, Honda's principal automobile models in the United States include passenger cars (*e.g.*, Accord and Civic) and light trucks (*e.g.*, CR-V, Odyssey, and Pilot). North America has become the second largest market for Honda vehicles, comprising more than half of all HML's global revenue from 2018 to 2020.

31.    The Honda CR-V is a compact crossover SUV, first sold in Japan in 1995 and introduced into the United States market in 1997, selling 66,000 vehicles in its first year. Honda's 2017 CR-V introduced the fifth generation of the vehicle.

32.    The Accord, first introduced in 1976, is now up to its tenth generation; the ninth generation was released in 2013, and the tenth generation was released in 2018.

33.    Over time, Honda has grown its brand in the U.S. market and has become one of the most dominating automakers in the United States.

34.    In 2019 and 2020, Honda sold 1.34 million and 1.6 million vehicles, respectively.[14]

35.    The CR-V has been Honda's best-selling vehicle in the United States for eight straight years, selling over 333,000 vehicles in 2020, and over 384,000 vehicles in 2019.[15] The Accord is Honda's third best selling vehicle, selling over 199,000 vehicles and over 267,000

---

[12] https://global.honda/newsroom/news/2020/c201107eng.html?from=r (last accessed May 13, 2021).
[13] *Id.*
[14] https://www.best-selling-cars.com/usa/2020-full-year-usa-honda-and-acura-sales-by-model/ (last accessed May 13, 2021).
[15] *Id.*

vehicles in 2019 and 2020, respectively. [16]

36.    Additionally, a recent report by McKinsey & Company found that over twice as many second-owner used vehicles are sold in the United States each year compared to new vehicles.[17]

37.    Honda has been able to transform itself into such a large player in the U.S. auto-market based on its assurances to consumers of care, durability, and quality. Consistent with its marketing and public statements, Honda touts its vehicles as safe and dependable so that consumers can rely upon the build and quality of the vehicles for daily use.

38.    Honda dedicates a page on its website entitled "safety," where Honda touts the safety of its vehicles.[18] Therein, Honda states that it conducts "Virtual & Real-World Tests," and touts that it has "developed two of the world's most advanced crash-test facilities — including the largest ever built and first to allow multi-directional crashes." Further, Honda states that it also "dreamt bigger to create some of the most advanced virtual crash tests in the world. All this combines to make safer roads for everyone."

39.    Notwithstanding the presence of the Defect in millions of Class Vehicles which prevents drivers from starting their engines and can cause engine stalls, Honda calls itself "a mobility company—we move people. But, for us, safety is an enormous priority. We don't just want to move you; we want to move you safely."[19]

40.    In addition to the real-world test performed at the "most advanced crash-test facilities," Honda "supplement[s] these tests" with "software that results in extremely reliable, accurate, and cost-effective crash simulations." [20] Honda claims that the safety testing procedures

---

[16] *Id.*

[17] https://www.mckinsey.com/industries/automotive-and-assembly/our-insights/used-cars-new-platforms-accelerating-sales-in-a-digitally-disrupted-market# (last accessed May 13, 2021).

[18] https://www.honda.com/safety (last accessed May 13, 2021).

[19] https://www.honda.com/safety/virtual-and-real-world-tests (last accessed May 13, 2021).

[20] *Id.*

it utilizes "allows [it] to make the road safer for everybody on it by engineering for worst case scenarios in an unprecedented way."

41.    On the "rugged" webpage found on Honda's website it touts that it conducts "cold-weather testing," including "on 23 different driving courses in the frozen prairies of Northern Minnesota" and in "-40-degree cold cells."[21] Further, Honda states that it "test[s] everything" at "the Honda Proving Center of California, spanning 3,840 acres of sun-scorched desert."

42.    Honda's uniform marketing message concerning the reliability of its vehicles is also found in the marketing materials unique to the Class Vehicles.

43.    For example, in Honda's brochure for the "all-new 2017 CR-V," Honda claims that "the bar has been raised again" and that the CR-V sets "the new standard in comfort, style and versatility." Honda marketed the CR-V as "[a] vehicle designed for a superior driving experience makes for better exploration of the roads ahead[,]" "delivering a wealth of standard features and driver and passenger conveniences[.]"[22]

44.    Notwithstanding the presence of the parasitic draw Defect in the vehicle, Honda touted the CR-V's reliability with the slogan: "Because no matter where you're going, there's always more to do, more to see, and more to experience—every day."

45.    Further, Honda stated that the vehicle provides "a stand-out experience" because "[e]very surface, every contour, and every feature has been thoughtfully designed to create a truly superior driving experience in every sense." In light of all these purported safety features and attention to detail, Honda instructs drivers to "commute with confidence."

46.    Honda's claims of excellence in quality, design, safety and reliability are consistent themes in its promotional materials.

---

[21] https://automobiles.honda.com/rugged (last accessed May 13, 2021).
[22] https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2017/Accord-Coupe/Brochure/V3/MY17-Accord-Wave-2-Model-Site.pdf (last accessed May 13, 2021).

CLASS ACTION COMPLAINT

47.     In its brochure for the 2018 Accord, the vehicle was touted as "[t]he most impressive Honda ever":[23]



48.     Honda further touted the vehicle's purported reliability by stating that it was "[b]uilt for what-if" and that it is "[a]t the forefront of safety":[24]



---

[23] https://pictures.dealer.com/rivertownhonda/8b4ec4800a0e0ca37432ffaa8919ba2f.pdf (last accessed May 13, 2021).

[24] *Id.*

49.    Honda similarly touted the 2018 CR-V as a dependable vehicle. In the brochure for the vehicle, Honda against states that drivers should "[c]ommute with confidence" and that there is "[e]xcellence in every detail."[25]

50.    The 2019 CR-V was promoted by Honda as a reliable vehicle with the slogan "Enhance Every Day," "Monday" through "Sunday[,] [p]eace of mind, from here to everywhere":[26]



**B.  A vehicle that is prone to parasitic draining creates an unreasonable risk of failure of mandated safety features and engine stalls.**

51.    Cars today have become sophisticated technological and mechanical machines that require electricity to maintain federal and state mandated safety features, as well as to perform their fundamental purpose (*i.e.*, transport persons from point A to point B).

52.    A vehicle's electrical components are powered by its battery and, when the engine is running, the alternator. When operated, the alternator also charges the vehicle's battery at a specified voltage level.

53.    When a vehicle is parked and turned off, the battery is the vehicle's only source of power. Consequently, the vehicle relies on a minimum level of electricity stored in its battery to

---

[25] https://automobiles.honda.com/-/media/Honda-Automobiles/Vehicles/2018/CR-V/2018-Updates/Brochure/MY18_CR-V_Brochure_Online_Mech1.pdf (last accessed May 13, 2021).
[26] https://web.archive.org/web/20190218165632if_/https://automobiles.honda.com/cr-v#features (last accessed May 13, 2021).

start the engine and operate. Specifically, the vehicle's sparkplugs which run the engine and the starter which cranks the engine rely on the battery when the vehicle is off.

54.     Additionally, in order "to reduce traffic accidents and deaths and injuries resulting from traffic accidents," automobile manufacturers are required to include certain core safety features in their vehicles that rely on battery power.[27]  For example, reliable emergency hazard warning signal lights, headlights, and taillights must be found in all passenger cars sold in the United States.[28]

55.     Other safety components that rely on engine-off battery usage are defrosters, door locks, alarm systems, interior lights, windshield wipers, and internal computer modules which store engine diagnostic codes, fuel economy adjustments, and other essential information.

56.     When the engine is off some of these components slowly draw on the battery's stored electricity. Once the engine is started, the alternator begins to replenish the minimal amount of electricity that the emergency features pulled from the battery while in the off state.

57.     Since the alternator cannot generate power with the engine off, all electricity used from the battery when the alternator is not running is a parasitic (*i.e.*, one-way) electrical drain. Over an extended period of time parasitic draws will deplete a vehicle's battery.

58.     Due to the reliance of multiple emergency safety features and the starter on a minimum amount of electricity stored in the battery, modern vehicles are designed so that this amount of draw does not significantly discharge a healthy battery below the amount necessary to perform its basic functions. For example, vehicles are now designed with precautionary systems to detect unintended draws occurring while the vehicle is off, including audible and visual alarms which notify drivers when lights are left on.  But most instances of unintended parasitic draining are not detectable and the driver's safety is at risk without their knowledge.

---

[27] 49 C.F.R. § 571.108.
[28] *Id.*; *see also* Cal. Veh. Code §§ 24250, 24400 (motor vehicles in California must be equipped with at least two headlights which must be used during "darkness" or "inclement weather").

59.     Should a vehicle experience constant parasitic drawing, the vehicle's battery will be under constant strain and its performance with degrade until total obsolescence. That is because vehicle batteries have a certain amount of "duty cycles"—*i.e.*, the recharging of a depleted battery—before it becomes unable to store the minimal amount of electricity required to perform its function. With each depletion, the battery becomes weaker and is unable to store as much electricity. This reduced capacity is irreversible and no amount jump-starts or recharging through the alternator will repair the battery.

60.     Prior to the inevitable complete failure of a battery, excessive parasitic draining can cause key safety components (*e.g.*, hazard lights, headlights, and taillights) to fail, including when the vehicle is being driven. For example, as the battery degrades, the dashboard, headlights, and hazard lights can flicker and dim due to poor electricity flow coming from the battery and/or alternator.[29]

61.     Because parasitic draining results in depleted batteries, the alternator is utilized to replenish the battery's power at a higher than usual rate, resulting in the failure of the alternator's internal electrical component and bearing. When that occurs, the alternator generates a reduced amount of power until the point when it ultimately fails. As the alternator's ability to generate power degrades, there is an increasing risk that the vehicle's engine will unexpectedly stall.[30]

62.     Also, should a vehicle lose its engine control module data due to battery depletion, the vehicle may experience reduced engine performance, reduced fuel economy, and increased emissions.

63.     The amount of draw that a vehicle requires to turn the engine on and operate core safety features is low, typically amounting to no more than a total trickle of 25 to 40 milliamperes

---

[29] *See* https://www.mysynchrony.com/blog/automotive/6-signs-your-car-battery-needs-to-be-replaced.html#:~:text=If%20your%20headlights%20dim%20while,again%20in%20the%20near%20future (last accessed May 13, 2021).

[30] *See* https://repairpal.com/symptoms/why-is-my-car-stalling (last accessed May 13, 2021); https://aamcominnesota.com/alternator-trouble-signs/ (last accessed May 13, 2021).

(mA). When a vehicle battery experiences an expected draw within this range, the battery should last months without the need to recharge itself from the alternator or receive a jump-start. Moreover, the life and operation of the battery and wider electrical system are not detrimentally impacted.

64.     A battery installed in car today should last a driver six years, with some lasting nearly twice that amount, so long as the battery is not subject to excessive parasitic drawing.[31] The cost to replace a vehicle battery typically varies from $45 to $250,[32] and the cost of a replacement alternator with repair fees can vary between $200 to $800.[33]

**C. Defendant sold over two million Class Vehicles suffering from the parasitic draw Defect.**

65.     For years, Honda has knowingly sold over two million of Class Vehicles which suffer from a serious parasitic draw Defect. What's more, the Defect provides no discernable warning to drivers and thus creates an unreasonable risk to each driver.

66.     Scores of complaints submitted to NHTSA reveal the magnitude of the Defect's impact of the Class Vehicles and consumers.

67.     Below are non-exhaustive exemplar complaints filed with NHTSA detailing the parasitic draw Defect found in the 2017 Honda CR-V Class Vehicles and Honda's failure to address the problem:[34] [35]

- NHTSA ID No.: 11005067 (dated July 13, 2017) ("Brand new 2017 CR-V touring, ***second night home. Battery completely drained while parked overnight*** and had to charge battery to start.");

---

[31] *See* https://www.kbb.com/battery-replacement/ (last accessed May 13, 2021); https://www.aaa.com/autorepair/articles/how-long-do-car-batteries-last (last accessed May 13, 2021); https://www.rd.com/article/how-long-do-car-batteries-last/ (last accessed May 13, 2021).
[32] *See* https://www.kbb.com/battery-replacement/ (last accessed May 13, 2021).
[33] *See* https://shop.advanceautoparts.com/r/advice/car-maintenance/how-much-does-it-cost-to-replace-an-alternator (last accessed May 13, 2021).
[34] Emphasis added throughout unless stated otherwise.
[35] NHTSA complaints are publicly available online and searchable by NHTSA ID Number at https://www.nhtsa.gov/recalls.

- NHTSA ID No.: 11012414 (dated August 2, 2017) (owner reported depleted battery in four month old car after it was parked for three hours);

- NHTSA ID No.: 11019266 (dated August 17, 2017) ("Car battery has drained on two occasions. Car won't start.");

- NHTSA ID No.: 11016279 (dated August 18, 2017) (owner reported that three months after purchasing his CR-V, the battery died after being parked for three hours. "***Honda service called [the owner[ the next day and said that they charged the car battery and that the cause was a parasitic drain*** and that [he] needed to put the electric brake on before [he] turned off the car. They told [him] that Honda was aware of this issues[.]"

- NHTSA ID No.: 11032872 (dated October 10, 2017) ("***Battery drains completely for no reason when vehicle is parked***. The first time it happened the dealership replaced the battery. It has [sic] happened twice since then and dealership does not provide a fix.");

- NHTSA ID No.: 11035424 (dated October 17, 2017) ("***Vehicle battery dead after sitting for 3 hours. 3 week old vehicle*** with 690 miles.");

- NHTSA ID No.: 11045525 (dated November 13, 2017) (2-month old vehicle would not start; the owner lamented: "so I will be late to work today and wasted my Sunday dealing with this too.")

- NHTSA ID No.: 11061486 (dated January 9, 2018) ("vehicle was parked in garage for a few days over holidays. When leaving to meet relatives at a restaurant, the car was completely dead.")

- NHTSA ID No.: 11064100 (dated January 22, 2018) ("***Car will not start after sitting overnight. Dealer performed software update which did not correct the problem to***.")

- NHTSA ID No.: 11073304 (dated February 16, 2018) ("Car purchased July 1, 2017. Jan 6, 2018 ***battery died after sitting for roughly 2 days***. Honda checked battery and found no problems with battery or electrical system. Friday, Feb 16, 2018 same problem: dead battery. Car was sitting for 3 days prior to discovery.")

- NHTSA ID No.: 11079667 (dated March 15, 2018) ("Car would not start twice in the first year. System seems to have some kind of drain on the battery when the car is off. First time, the car was not turned on for 3 days before trying to start it….. It is not acceptable for this to happen in the first year of having a car. Plenty of 2017 CRV owners are saying the same thing happened to them. It's all over the internet. Honda must find a solution and issue a recall.")

- NHTSA ID No.: 11088356 (dated April 16, 2018) (after parking car at airport for 13 days, "the battery was completely dead and was started with a jump.")

- NHTSA ID No.: 11089119 (dated April 20, 2018) ("Took 10 day vacation car was parked during that period. Car battery was dead when we returned…. [A Honda

dealership] informed me I need to drive car ever[y]day to keep it charged.. [and] that we need to acquire a battery charger because most likely the battery would be dead… Uncomfortable feeling for a brand new car with only 540 miles on it.");

- NHTSA ID No.: 11090045 (dated April 25, 2018) ("***Five times the battery drained completely with nothing on, after sitting unused, garaged, over night or after one day unused***.");

- NHTSA ID No.: 11098895 (dated May 30, 2018) ("I bought this Honda CRV 2017 awd on 04/01/2017 from Honda Folsom. On April 24,2018, it would not start. I called roadside assistance to jumpstart it and brought this to the dealer in Folsom. They changed the battery on April 24, 2018….. Today, May 30, 2018, it did not start again so it was jumpstarted again[.]");

- NHTSA ID No.: 11115700 (dated August 4, 2018) ("***The vehicle was in the garage with dead battery after 2 days of not being used***.");

- NHTSA ID No.: 11120233 (dated August 16, 2018) ("Bought the car April of 2017***, after a few months car went dead*** … dealer replaces the battery, not much explanation why. ***The problem happen 2 more times,*** had to jump start car again took it back to the dealer but this time dealer telling me that the car needs to be driven regularly and also on a certain distance so that battery will be charged up completely. And was told to buy a portable charger[.]");

- NHTSA ID No.: 11124343 (dated September 4, 2018) (after two-week vacation, "battery was dead as it was completely drained.");

- NHTSA ID No.: 11131089 (dated September 24, 2018) ("Car left in parking lot for four days. car would not crank or start.");

- NHTSA ID No.: 11131864 (dated September 27, 2018) ("***For the second time, after leaving the vehicle parked for 3-5 days the battery has been drained and unable to start the engine***.");

- NHTSA ID No.: 11142765 (dated October 25, 2018) ("***vehicle battery drains after 2 days of non use***");

- NHTSA ID No.: 11143939 (dated October 29, 2018) ("***Vehicle was parked over night in the morning the battery was completely drained*** I left no lights on there was no reason for a drained battery on a new car.");

- NHTSA ID No.: 11145200 (dated November 4, 2018) ("***battery drains out completely and car won't start***.. Just 18000 miles. 4 times in 3 days.");

- NHTSA ID No.: 11153477 (dated November 24, 2018) ("Battery was dead after parking on street, had to call for emergency road service to jump car. There was no excessive usage of battery or electronics in the car.");

CLASS ACTION COMPLAINT

- NHTSA ID No.: 11154819 (dated November 29, 2018) ("*After a month*. We went for a vacation and as we went back, *my car is not starting anymore*.");

- NHTSA ID No.: 11165366 (dated January 5, 2019) ("January 3rd my car would not start. Jan 4th and 5th again my car would not stop without a jump. I have had nothing but electrical problem, radio blinking and not coming on or brake system engaging without braking etc. since I have purchased.");

- NHTSA ID No.: 11165157 (dated January 8, 2019) ("*Vehicle frequently runs out of battery and need to jump start.*");

- NHTSA ID No.: 11182473 (dated February 26, 2019) ("Vehicle does not shut down when turned off. This causes a high [sic] parsitic draw on the battery which causes the vehicle not to start in a matter of hours. … my battery blew up releasing toxic gasses filling the exterior of the car which contain my wife and kids at the time.");

- NHTSA ID No.: 11187354 (dated March 17, 2019) ("Battery dies after sitting for 5+ days. *New battery installed, same issue*. *TSB-032 has been applied, still have the problem*.")

- NHTSA ID No.: 11191314 (dated March 25, 2019) ("Vehicle is unable to start after shutdown with no diagnosed cause…. Vehicle requires jump start for successful start upon symptoms appearing… vehicle has been brought to Honda dealerships several times for diagnosis and service… latest visit, car was unable to start immediately after parking car at dealership.… *Dealership applied Honda technical service bulletin (TSB) 17-032 and did not fix problem*….");

- NHTSA ID No.: 11194855 (dated April 9, 2019) ("*If I stop using the cr-v for two days the battery goes dead* and I have to recharge it. The original battery was replaced after the first year in the Honda dealer.");

- NHTSA ID No.: 11220318 (dated June 15, 2019) ("I had parked my car for 4 days while away on a business trip. I came back and the car was totally dead. It wouldn't start, I could not even open the doors without the emergency key.");

- NHTSA ID No.: 11229585 (dated July 5, 2019) ("*If I parked this car over two nights, its battery will die* and need to call AAA to jump it. It occurs over five times in only two years. Then I changed my battery, it still happened and I also turn off all light in my cars.");

- NHTSA ID No.: 11256787 (dated September 20, 2019) ("Issue with drained battery/vsa modulator. Vehicle lights won't turn off when shutting off vehicle. Key fob will not work because vehicle battery will die. *Once jumped, vehicle will die again. Battery has been checked and it doesn't seem to need replacing yet no active recall reported*.");

- NHTSA ID No.: 11258834 (dated September 29, 2019) ("My 2017 crv-ex has had its battery drained twice. With only 4600 miles driven. I've had the battery drained after 2 days to less then 24 hours. I'm on my third time now.");

- NHTSA ID No.: 11268859 (dated October 16, 2019) ("Yesterday the car would not start, battery issue was determined to be the likely problem after placing a service assist call to Honda. A jump start and problem was resolved. Mileage approx. 19,000. This is the second time this occurred since owning the car. The first time it happened within a couple of months of owning the car. In both instances, the car had been parked less than 2 hours.");

- NHTSA ID No.: 11280821 (dated November 18, 2019) ("dead battery - 11-17-2019, 11-18-2019 (2yrs 3months old, 16,000 miles) garage kept. Car won't start.");

- NHTSA ID No.: 11308113 (dated February 10, 2020) ("*Vehicle battery will die after two days of non starting. This happens constantly*.");

- NHTSA ID No.: 11322233 (dated April 25, 2020) ("Battery keeps dying after sitting more than a several days. This is the third time since owning the car.");

- NHTSA ID No.: 11322811 (dated April 30, 2020) ("Car would not start and goes dead with 3rd attempt to start. This is the 3rd time i must have car towed to dealership; car has 4,000 miles.");

- NHTSA ID No.: 11322903 (dated April 30, 2020) ("numerous people including myself have been affected by this car draining a brand new battery and leaving people stranded and needing a jumpstart. My car is currently at the dealership again to have this issue looked at.");

- NHTSA ID No.: 11324710 (dated May 15, 2020) ("As of May 13, I have had to return my leased 2017 cr-v to the dealership four (4) times for the same reason - the battery would not work , hence the engine did not start… *I was verbally told the problem is my fault - since I do not drive the vehicle enoug*h.");

- NHTSA ID No.: 11325206 (dated May 19, 2020) ("*Battery keeps dying after 2 days of non operational.this has happen multiple times and no fix from dealer*.");

- NHTSA ID No.: 11325093 (dated May 19, 2020) ("My wife and I have, on numerous incidents, had to jumpstart the cr-v due to a dead battery.");

- NHTSA ID No.: 11326577 (dated May 30, 2020) ("*Car battery will die if the car is not used for more than a couple days.* We have taken it into the dealership to get checked many times only to be told nothing is wrong. *Battery has been replaced multiple times as well only for the car to die a few days later.* We purchased the car brand new in March 2017. The first time it happened it was only a few months into owning the car.");

- NHTSA ID No.: 11329352 (dated June 17, 2020) ("The car was towed to the dealer because the battery (less than 3 years old) was dead and was replaced because the car was still in warranty. Then on 6/13/2020 the second battery was completely dead with only 663 miles. I think the situation should be investigated and remedied due to concern about safety.");

- NHTSA ID No.: 11241811 (dated August 5, 2019) ("Battery failure [at] 27275 miles... Car won't start, dashboard lights blinking and flashing, all sorts of error codes…*alternator may be working hard to recharge battery that won't recharge*");

- NHTSA ID No.: 11349364 (dated August 15, 2020) ("Dead battery for 3 mornings in a row and now on the 4th day it will not accept a jump.");

- NHTSA ID No.: 11351281 (dated August 15, 2020) ("*Battery died overnight, took vehicle to different dealerships, replaced battery.. Nothing help!*");

- NHTSA ID No.: 11355664 (dated September 17, 2020) ("*Battery runs down. Put new battery...same problem.* Need a jump to start for me to drive. Battery runs down if it sits for a day problem steering after it is jumped.");

- NHTSA ID No.: 11364200 (dated October 13, 2020) ("I lost power…. I have no documents except the dealer's report that there was nothing wrong except a weak battery.");

- NHTSA ID No.: 11373970 (dated November 10, 2020) ("*Battery is dead if I don't drive it for 2 days. This has happened three times in the past year*, the last two times just a few weeks apart. And this past time I drove it on a Thursday and it was dead on Saturday. Fortunately the times this has happened the car was in the garage, so I was not stranded.");

- NHTSA ID No.: 11376180 (dated November 24, 2020) ("*Battery will be dead if car not used every 2 days. 4 times I have had the dealer replace my battery and 1 time myself*. Dealer refuses to solve the problem. A vehicle[']s battery should not go dead after only 4 days of use.");

- NHTSA ID No.: 11378523 (dated December 8, 2020) ("The battery dies frequently for no reason after not driving for one to two days. When the battery dies, it locks up the brakes and messes up the safety features.");

- NHTSA ID No.: 11386463 (dated January 4, 2021) ("Ongoing intermittent issues since car was purchased May 2017. Repeated battery drains and complete failure, battery replaced by Honda July 2020. Drove, parked, would not start or run accessories Nov. 30 2020 and on Jan. 1 2021.");

- NHTSA ID No.: 11388291 (dated January 15, 2021) ("Parasitic power draw on system resulting in dead battery if not driven every other day. Honda is aware of the issue but has not issued a recall.");

CLASS ACTION COMPLAINT

- NHTSA ID No.: 11390863 (dated January 31, 2021) ("Overnight dead battery.");

- NHTSA ID No.: 11397119 (dated February 20, 2021) ("Car battery gets drained out over night and it's not the battery or the alternator."); and

- NHTSA ID No.: 11398524 (dated March 1, 2021) ("Honda CRV 2017 keeps draining battery even after it is turned off and causing routine service calls.… Hope such things do not happen on road when parked and create other issues.").

68.    Below are exemplar complaints filed with NHTSA detailing the parasitic draw

Defect found in the 2018 Honda CR-V Class Vehicles and Honda's failure to address the problem:

- NHTSA ID No.: 11076480 (dated March 6, 2018) ("While on vacation, I had my 2018 Honda, CRV-EXL parked for nearly 2 weeks.  On our return, I attempted to start the vehicle.  It would not start as the new battery was completely drained and dead.");

- NHTSA ID No.: 11115697 (dated August 4, 2018) ("Draining battery suspected parasitic. … *The vehicle was sitting in the garage for about 2 days since last use.*");

- NHTSA ID No.: 11118082 (dated August 6, 2018) ("***While driving 35 mph, the vehicle inadvertently came to a stop***. There were no warning indicators illuminated. The contact stated that the vehicle was able to restart. The vehicle was taken to Lithia Honda in Medford… *where the contact was informed that the alternator needed to be replaced*.");

- NHTSA ID No.: 11139129 (dated October 8, 2018) ("Car stalls when going up parking ramp, car dies at intersection…. The car has been a problem ever since I got it earlier this year...*there is only 4,000 miles on it and so far, they changed the battery...*explanation I was given is that Honda has bad batteries….still having problems, car is stalling, panel freezes, sensors don't work....I believe it's a major safety issue…..*Brakes failed, panel freezes, car stalls... help!*");

- NHTSA ID No.: 11316406 (dated March 5, 2020) ("*I was away for 17 days and my battery died.  Went to dealer and he said this is normal.  It's dangerous and should not happen!*  Car is 18 months old!  This is dangerous too.");

- NHTSA ID No.: 11383284 (dated December 14, 2020) ("2018 Honda CRV Touring Purchase September 8, 2018.  Currently has 16,400 miles.  On Thursday, December 10, I went out to start my Honda CRV Touring in the garage.  It would not start. … The towing company driver informed me that this is about the 13th Honda 2018 2020 that he has had to jumpstart.");

- NHTSA ID No. 11342279 (dated July 30, 2020) ("I parked my car in my garage with half a tank of gas on Sunday.  On Wednesday I went to start my car to no avail."); and

- NHTSA ID No. 11397174 (dated February 21, 2021) ("Battery drains abnormally.").

CLASS ACTION COMPLAINT

  
69.     Below are exemplar complaints filed with NHTSA detailing the parasitic draw Defect found in the 2019 Honda CR-V Class Vehicles and Honda's failure to address the problem:

- NHTSA ID No.: 11181325 (dated February 20, 2019) ("Battery keeps dying after 2 days of not using my car. I brought my car to a honda dealer and they checked it and said there was nothing wrong with it. So far this has happened 4 times.");

- NHTSA ID No.: 11182356 (dated February 25, 2019) ("Purchased 2019 honda cr-v on february 9, 2019. Drove only twice in the first 2 weeks. Attempted to drive for the 3rd time (101 miles on odometer) on the 2 week anniversary of buying, february 23, 2019 and the car was completely dead!");

- NHTSA ID No.: 11184460 (dated March 5, 2019) ("Purchased 12/28/18.  After driving home from dealer(60 miles) car was not used for 2 days.  Tried to start car and battery was dead—totally drained. … Dealership is aware of 4 additional 2019 crvs with the same problem.");

- NHTSA ID No.: 11184357 (dated March 5, 2019) ("The battery is repeatedly dead after a day or so if not driven.");

- NHTSA ID No.: 11185761 (dated March 11, 2019) ("After turning the vehicle off, the battery drained and the vehicle could not be restarted. … The battery was replaced, but the failure continued.");

- NHTSA ID No.: 11186743 (dated March 14, 2019) ("Vehicle failed to start without warning. ... The technician stated that the vehicle needed to be driven everyday to keep the battery charged.");

- NHTSA ID No.: 11187233 (dated March 16, 2019) ("*Left car parked for 5 days. Nothing left on but battery was drained. Needed to call a tow truck for a jump start*.");

- NHTSA ID No. 11187238 (dated March 16, 2019) ("*Continual battery failures*, batteries go dead if not driven every day. On my second battery and died as two days not being driven. Some sort of parasitic drain?");

- NHTSA ID No.: 11190065 (dated March 19, 2019) ("*If the car sits for 2-3 days without running the battery drains and dies completely.*");

- NHTSA ID No.: 11192285 (dated March 28, 2019) ("Vehicle battery was dead after the suv sat unused for 2 days within 3 weeks and 300 miles of ownership. *This has occurred over 6 times in 3000 miles*. Battery has been replaced by the battery twice and is now on its third battery. Dealer notes this problem exists on all 2019 crv's delivered to-date and that they do not yet have a solution.");

- NHTSA ID No.: 11192339 (dated March 29, 2019) ("If the car sits for 24 + hours the battery issue, I have had this happen 6 times now. Called dealer 3+ times, brought it in they first said it was the battery (which we all knew it was not) but they put in a new one they said. Anyhow as you already know this is an electrical issue that needs to be fixed a.s.a.p. Dealer now tells me honda is working on a fix but in the mean time I have had to have the car jumped and paid for this as well it's a major nuisance I want fixed very soon or want my money back and I will buy another car. This has been goin on since i bought this car dec. 28th 2018.");

- NHTSA ID No. 11196738 (dated April 16, 2019) ("***Car 2 months old, have only put 1300 miles on it, let it sit for 5 days, and battery totally dead!***");

- NHTSA ID No.: 11196271 (dated May 1, 2019) ("***The consumer stated the battery dies within 2 days of shutting the vehicle down***, if not driven again. The emissions system drains the battery. There is no repair available for the failure.");

- NHTSA ID No.: 11207890 (dated May 15, 2019) ("***Electrical problem,4/10/19 at 200 miles, battery completely dead after 2 days of not driving because computer program error***. Honda is aware of problem, but does not instruct the dealer to fix the problem before selling its cars[.]");

- NHTSA ID No.: 11231760 (dated July 14, 2019) ("***Battery dies overnight***. Car has only 1000 miles and i've had to jump it 3 times. … A new car should not behave this way.

- NHTSA ID No.: 11172347 (dated January 27, 2019) ("***My 2019 honda cr-v's battery dies after sitting in my garage for two days. It has only 320 miles on it.***");

- NHTSA ID No.: 11244857 (dated August 19, 2019) ("Battery is draining out after sitting for 3 days in a parking lot, and will not start up again without a jump.");

- NHTSA ID No.: 11252372 (dated August 30, 2019) ("The vehicle was parked at an airport and would not start upon the contact's return from a five day trip. … Manufacturer suggested that the contact unhook the battery if the vehicle remained parked more than a day. … The failure mileage was 1,900.");

- NHTSA ID No.: 11279556 (dated November 12, 2019) ("***Went away for a weekend trip and hadn't driven the car for 3 days. Came back and the battery was totally drained***, had to jump start the car. It has roughly 3,300 miles on the odometer.");

- NHTSA ID No.: 11299090 (dated January 13, 2020) ("The ***SUV would not start after not being driven for 2 days***.");

- NHTSA ID No.: 11324191 (dated May 11, 2020) ("***After leaving vehicle in garage for 24 hours or more, then attempting to start the vehicle, vehicle will not start***. After using battery jump, vehicle will start and run as normal. This has happened several times over the past few months, even when vehicle is run for couple miles or more.");

- NHTSA ID No.: 11337956 (dated July 7, 2020) ("***The contact stated that an hour after parking the vehicle, the battery was drained.*** The contact stated that the failure recurred six times.");

- NHTSA ID No.: 11360689 (dated September 23, 2020) ("The contact stated that the battery became drained on two separate occasions. … The battery was replaced. ***The failure recurred after two weeks***. … ***The technician stated that the failure was common with the make and model and that the dealer would not disclose that information.*** The contact called the same dealer who confirmed the information and told the contact to buy a jumper cable.");

- NHTSA ID No.: 11373267 (dated November 5, 2020) ("The car wouldn't start until I messed with it a lot. I've read it's a battery drain and software update issue on message boards- several people complained about it. I've only had my 2019 honda crv since september 2019.");

- NHTSA ID No.: 11376801 (dated November 28, 2020) ("Our 2019 honda crv was purchased in december of 2019. The battery had died 3 times and had to be recharged by the dealer.  The honda dealer refused to replace the battery and could tell us why the battery keeps dying. The car is driven every day and the lights are always turned off automatically at night after driving.");

- NHTSA ID No.: 11385578 (dated December 30, 2020) ("On august 28 I went to start my car and it would not turn on. I called the dealership and they jumped it and the car started. They tested the battery and it was fine but changed it anyway. On December 23 it would not start and had to be jumped. This happened again on December 26 and 27. The car is currently at the dealership. They have said nothing is wrong with the battery or the car even though this has happened to multiple 2019 cr-vs."); and

- NHTSA ID No.: 11397192 (dated February 21, 2021) ("The battery has failed multipile time in the first 18 months of ownership. The first instance at the 4 month mark with about 1000 miles on the car.").

70.    Below are exemplar complaints filed with NHTSA detailing the parasitic draw Defect found in the 2016 Honda Accord Class Vehicles and Honda's failure to address the problem:

- NHTSA ID No.: 10959718 (dated March 9, 2017) ("***The battery has been replaced twice by the dealership.*** We are not leaving anything on.");

- NHTSA ID No.: 10970672 (dated April 5, 2017) ("Vehicle would not start possibly due to alternator or battery malfunction after being purchased for one year.");

- NHTSA ID No.: 10978620 (dated April 15, 2017) ("***Purchased 2016 accord touring in may 2016. In April 2017 the car would not start*** - appeared to be a battery issue.");

- NHTSA ID No.: 11013956 (dated August 9, 2017) ("*I am unable to start my car after it sits for ten days to two weeks or more*. The battery goes dead and my family and I are left potentially stranded. My wife and I travel frequently and return to a car that won't start due to a parasitic draw on the battery. *This is a safety issue as you can imagine* flying home, taking the bus to the parking lot at the airport at 11:00 pm, going to your car and finding a dead battery which puts our safety in peril. … [the honda dealership stated that] this is now normal with the new honda accords due to the parasitic draw on the battery when the car isn't running. … I called another honda dealer's service department in the kansas city area and received the same comment. … this is now what I can expect on my new accord, if it sits for ten days or two weeks then the battery will die". ... I have had this problem since last fall and it has occurred on several occasions.");

- NHTSA ID No.: 11047161 (dated November 18, 2017) ("Second time on the last four days that my car will not start. … I was working in los angeles four days later and once again the car wouldn't start. … this is a problem because of where I work and I cannot let my wife drive the car due to not having the confidence that the car will start, especially if she has the kids with her.");

- NHTSA ID No.: 11013956 (dated August 9, 2017) ("*I am unable to start my car after it sits for ten days to two weeks or more*… due to a parasitic draw on the battery. This is a safety issue[.]" The owner added that when he brought his vehicle into a Honda dealer he was told "that this is now normal with the new Honda accords due to the parasitic draw on the battery when the car isn't running which ultimately drains the battery to a point where it won't start.");

- NHTSA ID No.: 11112042 (dated July 17, 2018) ("*My battery has a shortage-2016 with less than 40,000 miles.  This is clearly a defect*.");

- NHTSA ID No. 11153323 (dated November 23, 2018) ("I had to get my car towed bc it would not start.");

- NHTSA ID No.: 11153677 (dated November 26, 2018) ("After driving the vehicle and turning the engine off, the battery power would drain and the vehicle could not be restarted. *After replacing the battery with a new battery, the failure continued*.");

- NHTSA ID No.: 11192228 (dated March 28, 2019) ("*Battery has been replaced 3 times and constantly drains*.");

- NHTSA ID No.: 11209968 (dated May 25, 2019) ("Battery has been replaced twice in 1 year.");

- NHTSA ID No.: 11268149 (dated October 13, 2019) ("When I get in my car sometimes to start it the battery is dead.");

- NHTSA ID No.: 11281257 (dated November 20, 2019) ("My battery has died multiple times without leaving anything on or open.");

CLASS ACTION COMPLAINT

- NHTSA ID No.: 11281833 (dated November 22, 2019) ("August 2018 battery in car stopped working. Stationary car would not start. Replaced battery and in November 2019 battery stopped working again. Car wont start.");

- NHTSA ID No.: 11360118 (dated September 20, 2020) ("I just replace the battery for the 3rd time on 9/19/2020. This is a problem for a car 4 years old."); and

- NHTSA ID No.: 11390859 (dated January 31, 2021) ("If the vehicle is not started and driven at least every second day. A no start condition results. Battery is new, the second one from Honda dealer. … Purchased an after market start booster to resolve dead battery issue.").

71.    Below are exemplar complaints filed with NHTSA detailing the parasitic draw Defect found in the 2017 Honda Accord Class Vehicles and Honda's failure to address the problem:

- NHTSA ID No.: 11098225 (dated May 2, 2018) ("car needed to be jumped started twice. ...  First time, car would not start after waiting 20 mins. Second time, car in garage over night would not start.");

- NHTSA ID No.: 11174885 (dated February 6, 2019) ("Over the last several days the car would not start without requiring a jump for the battery. Then it would run, but once the car was off and had to be restarted it would require another jump. …It ran fine for the next few days, but currently its parked and won't start.");

- NHTSA ID No.: 11221967 (dated June 23, 2019) ("Car won't start or turn over and the lights just flicker on and off. I'm currently waiting on a tow truck to get a jump my car is parked in the garage and it won't start. Very frustrated with Honda I had the car less than 2 years and I have less than 50k miles.");

- NHTSA ID No.: 11266417 (dated October 4, 2019) ("Last night I had just gotten home from worked and gone in the house to change for church. Less than 5 minutes later, I returned to my car and when trying to start it, it would start up. Lights flickered on dash, but it wouldn't turn over. …. *This is the third time this his happened this year, with in a few months*. Car has less that 50k miles. … *[T]his could be very dangerous.");*

- NHTSA ID No.: 11308018 (dated February 9, 2020) ("There are times the car will not start. Have to get a jump to start.");

- NHTSA ID No.: 11327379 (dated June 5, 2020) ("1/10/2020 car wouldn't start.…. 6/4/2020 my car did the exact same thing.");

- NHTSA ID No.: 11329911 (dated June 21, 2020) ("After owning the car for 2.5 years, the car would not start and required a jump. After several instances of this occurring, the original oem battery was replaced. *Within 2 months of installing the new battery, the*

*car wouldn't start and required a jump*. The car will start fine for a few weeks and then requires another jump (this repeats every several weeks).");

- NHTSA ID No.: 11384868 (dated December 24, 2020) ("The car battery does not hold charge. *If the car is not used for three days to a week, the battery is completely dead*.");and

- NHTSA ID No.: 11390956 (dated February 1, 2021) ("*Vehicle has been dead on 4+ occasions*. Stationary, in garage. Vehicle is driven as little as once per week at times but the battery or electric draw has caused the car to fail in as little as a couple days or even trunk being open for 15-20min…. *Dealer is brushing this off without responsibility…They refuse to replace the battery*[.]").

72. Below are exemplar complaints filed with NHTSA detailing the parasitic draw Defect found in the 2018 Honda Accord Class Vehicles and Honda's failure to address the problem:

- NHTSA ID No.: 11270292 (dated October 22, 2019) ("*The problem we had with this 2018 Honda Accord, was it wouldn't start. Without warning of low battery or faulty charging* or any other indication displayed in the warning or advisory systems of the car previously - it just wouldn't start…. Now, if this were you, or your wife, or your daughter, or grand mother; or all of them in the car together going to an event like a wedding - and they were suddenly and unexpectedly, without warning .... Stranded on the side of a road in the middle of nowhere, at night, in stormy weather, or worse... Evacuating the area from a tsunami. Would you be concerned?");

- NHTSA ID No.: 11374134 (dated November 11, 2020) ("I have changed two batteries since I bought it first battery that it came with completely died and couldn't even get a jump. Changed it and now I have to keep getting jump everyday."); and

- NHTSA ID No.: 11394473 (dated February 3, 2021) ("The vehicle has 8000 miles on it. *The safety problem on this vehicle is that the electric system has shorted 5 batteries and has left me stranded in various locations, lending to unsafe conditions.* The Honda dealer has replaced 5 batteries on my vehicle and now my car has broken-down again making it six shorted batteries on a vehicle that barely has 8k miles.").

CLASS ACTION COMPLAINT

**D. Plaintiff's Class Vehicle suffers from the parasitic draw Defect, which Honda is unable to fix, causing Plaintiff to suffer significant injuries.**

73.     Shortly after purchasing a new 2019 Honda CR-V on March 12, 2019, Plaintiff first experienced an issue caused by the parasitic draw Defect in his Class Vehicle—although he was unaware of the cause at the time. After returning from a week-long trip to visit family, Plaintiff found his vehicle had a dead battery and was unable to start.

74.     Stranded at an airport parking lot, Plaintiff called an emergency service company to jump-start his vehicle. Plaintiff then drove to Smart Honda where he was told by an employee that the issue he experienced was "common" and that Honda had to "reset" the vehicle so that it would not occur again.

75.     Again in May of 2019, Plaintiff's vehicle suffered from an inexplicable dead battery and he brought his vehicle into Smart Honda. On May 15, 2019, Smart Honda performed a multipoint inspection and updated the vehicle's Power Control Module ("PCM"), as Honda instructed in its Service Bulletin 19-039.[36]

76.     Despite Smart Honda performing the PCM update as Honda instructed in Service Bulletin 19-039, Plaintiff's vehicle continued to suffer from the parasitic draw Defect.

77.     On December 18, 2020, Plaintiff again brought his vehicle into Smart Honda. This time, Smart Honda replaced the battery in the vehicle. Smart Honda also ran a system check with a GR8 Battery and Electrical Diagnostic Station, which a provides a battery state-of-health analysis.[37] The analysis concluded that there is "no parasitic draw," and reset the vehicle's diagnostic trouble codes (the car's on-board computer).

78.     Given the issue causing the dead batteries is not limited the battery itself, the new battery fared no better and Plaintiff's vehicle continued to die after sitting for seven to ten days.

---

[36] NHTSA ID No.: 10156620, Manufacturer Communication Number: A19-039, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10156620-0001.pdf. *See infra* ¶ 122.

[37] https://www.midtronics.com/diagnostic-chargers/gr8-series/ (last accessed May 13, 2021).

79.    Just a month later, on January 20, 2021, Plaintiff was forced to bring his vehicle back to Smart Honda for the same issue.

80.    On February 1, 2021, Smart Honda stated that the "new battery" that it installed was "bad" and replaced it with another battery.

81.    On February 2, 2021, Smart Honda technician contacted Honda's technical support line and spoke with an engineer.[38] The engineer stated that 2017-2019 Honda CR-Vs were known to have a defect where the Body Control Module ("BCM"), which is responsible for monitoring and controlling all other sub-computers in the vehicle, does not shut down when the vehicle is turned off. By continually drawing power from the battery, it is inevitable that the BCM depletes the battery's stored electricity.

82.    On February 4, 2021, Smart Honda replaced the BCM in Plaintiff's vehicle.

83.    The following week, Plaintiff attempted to pick up his vehicle from Smart Honda. However, when Smart Honda attempted to start the vehicle the battery, once again, was dead.

84.    On February 19, 2021, Plaintiff was finally able to pick up his vehicle from Smart Honda. Since then, Plaintiff has been stuck with a vehicle that poses a safety risk to him and his family and can leave him stranded without any prior warning.

**E.  Honda knew that the Class Vehicles suffered from the Defect prior to its sale of the Class Vehicles.**

85.    On information and belief, Defendant was aware of the Defect and the risk it posed to Class Vehicle owners and lessees, through but not limited to: (1) Defendant's pre-sale durability testing and part sales, (2) Defendant's own records of customer complaints; (3) dealership repair records; (4) NHTSA complaints; (5) consumer complaints posted on the internet; and (6) warranty and post-warranty claims.

86.    Honda is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, Honda conducts tests, including pre-sale durability testing, on

---

[38] Plaintiff learned of Smart Honda's discussion with Honda technical support on February 24, 2021.

incoming components, including for parasitic draws, to verify the parts are free from defects and align with its specifications.

87.    Honda touts its Global Honda Quality Standard ("G-HQS"), which it claims "continuously enhances quality at every stage, encompassing design, development, production, sales and after-sales service in order to realize products offering a new level of outstanding quality." [39] Honda adds: "This initiative aims to achieve the highest quality through the creation of drawings designed to facilitate manufacturing, as well as develop manufacturing control techniques that limit process variability, by applying and reflecting design and development expertise at the production preparation and production (mass-production) stages." [40]

88.    As part of this initiative, Honda "Assur[es] Long-Term Reliability through Rigorous Durability Testing":[41]

> Honda subjects new and redesigned models to a rigorous regimen of long-distance durability testing before beginning mass production to verify that there are no quality issues.
>
> Honda also disassembles vehicles used in the test drives into every single part and verifies that there are no quality issues through a process consisting of several thousand checks. By accumulating data on the issues discovered through these test drives and detailed inspections as well as associated countermeasures, the Company is able to ensure a high level of quality and reliability.

89.    Relatedly, "Honda's production departments establish manufacturing control items and criteria for each part, process and operation to prevent product quality issues[,]" conducts extensive on-site audits of its suppliers for quality assurance, and "then works to improve part quality through activities that emphasize communication with suppliers, for example, by sharing audit results and cooperating to identify opportunities for quality improvement."[42]

---

[39] Honda Sustainability Report 2018, available at https://global.honda/content/dam/site/global/about/cq_img/sustainability/report/pdf/2018/Honda-SR-2018-en-065-078.pdf (last accessed May 13, 2021).
[40] *Id.*
[41] *Id.*
[42] *Id.*

90.    In addition to the "quality assurance system" put in place by the G-HQS related to the production and manufacturing of the Class Vehicles, Honda has in place procedures to investigate "issues after sales;" namely, through its dealerships: [43]



91.    In particular, Honda has a robust network of customer service department throughout the world which it relies upon to monitor quality control issues: [44]



---

[43] *Id.*
[44] *Id.*

92.    Honda also maintains a Technical Research & Support ("TRS") Group at its California headquarters which is responsible for, *inter alia*, identifying and investigating potential defects in Honda vehicles.

93.    Honda also regularly monitors the NHTSA databases for consumer complaints as part of its ongoing obligation pursuant to the TREAD Act, 49 U.S.C. § 30118, to identify potential defects in its vehicle. As shown above, numerous complaints filed by Class Vehicle owners with NHTSA establish that Honda knew, or should have known, of the Defect *at least* as early as March 2017 (NHTSA ID No.: 11005067), based on publicly available information.

94.    Indeed, given Honda's history of skirting its monitoring obligation under the TREAD Act and subsequent fine, Honda was likely acutely aware of (or should have been) each NHTSA customer complaint regarding the parasitic draw Defect. Specifically, in 2015, Honda was fined $70 million (the highest penalty allowed by Congress) by NHTSA "for failing to report deaths, injuries, and certain warranty claims to the federal government in violation of the TREAD Act" from 2003 through 2014.[45] As part of the Consent Order "Honda also agreed to increased NHTSA oversight and third party audits to ensure that all required reporting is completed[.]"

95.    In addition to NHTSA complaints, customer complaints of the parasitic drain Defect in Class Vehicles can be found on various consumer websites and message boards.

96.    For instance, on March 7, 2017, an owner posted a message on *CRVOwnersClub.com* complaining of the Defect:[46]

> I own a 2017 CRV EXL-Nav it is 2 months old with 800 miles on it. ***Twice the battery went totally dead while sitting in my garage***. First at about 500 miles and again at 800 miles. I put it on a charger and drove it to the dealer and both times they could find no problem. The car was in the garage and doors locked there were no lights or anything else left on. As it is a double garage and I go in it at least twice daily. Note the first time the car sat for five days without being run, the second time three days. ***The service department said to run it daily. I do not consider this a very good solution***. What if I go on a trip and

---

[45] https://one.nhtsa.gov/About+NHTSA/Press+Releases/2015/DOT-fines-Honda-$70-million (last accessed May 13, 2021).
[46] https://www.crvownersclub.com/threads/2017-crv-battery-going-dead-overnight.135193/ (last accessed May 13, 2021).

park it for a week. I have no confidence it will start when I come back. Has anyone experienced this problem or have any suggestions.

Another person responded on March 9, 2017: "There have been several posts about battery problems on 2017's. Starting it every day is nuts. Horrible advice. My vehicles routinely sit for two weeks or more without running them. Never ever had problems. Summer or winter. Keep pushing your dealer on this."[47]

97.    On May 15, 2017, another owner reported the "same problem": [48]

Today is the second time we've had the exact problem described--dead battery on a '17 CR-V, in our case from 55 hours of not being driven. We even joked about it over the weekend, while running errands in our 2009 Fit, "hope the CR-V still starts on Monday!" It did not not start on Monday. (The other case was when trying to install the super tight OEM rear seat covers with all the lights on for a few hours. Which still seemed suspiciously short to kill a battery, but after waiting a few hours it did start at least.)

**We bought this to be a second, family car, on the reputation** built from having purchased our '09 Fit Sport in 2008, and having never had a moment's issue with it.

**With a new baby joining the family in 3 weeks, I can't imagine how I'm going to put my faith in this car for emergencies**. I shouldn't have to recreate the scene from Apollo 13 where they're working to boot up the lunar module in just the right sequence so as to not overload the batteries--it's an automobile, not a trip to space.

Not much to add to what the previous posters have stated, dealer service sounds confused when we call, and I'm sure won't find anything when we get it to them tomorrow. Will be sure to ask for Honda Tech Line Summary ATS 170301. **For what it's worth, we religiously set the electronic parking brake every single time we park, so I don't know what more can be done except buying a battery-operated jumpstarter.** …

---

[47] *Id.*
[48] *Id.*

98.     Other Class Vehicle owners complained of their vehicle's stalling. For example, on March 11, 2019, an owner complained that their "2017 CRV died on highway" while traveling 65 mph, which "almost caused an accident," and the vehicle "had to be towed" to the dealership.[49]

99.     Multiple customer reports of the Defect in Class Vehicles were also posted on *carcomplaints.com*. For example, May 20, 2019, the owner of a 2019 CR-V complained that her vehicle "stall[ed] out" at least three times in a matter of weeks.[50] The owner reported that her vehicle first stalled when she was driving 10-15 mph in her work parking lot. Three weeks later, as she was driving 60 mph on a highway, the vehicle "completely died with no warning lights or indication." Moreover, she lost power steering and the engine would not start again. A week later, after dropping off her vehicle at the Honda dealership, the vehicle stalled for a third time. This time, the driver reported that the CR-V "completely stalled out again" while driving, "leaving [her] in danger of" getting hit by other vehicles.

100.    On January 22, 2019, the owner of a 2019 CR-V complained: "Dead Battery. Called Honda Roadside Assist and they said 'I left the lights on'. I didn't think I had, but hey, I'm human and it could have happened."[51] Six days later, the same owner provided an update: "Again dead battery after not driving the car for a couple of days. This time, towed to dealership. They couldn't find any problem. Basically, I had to wait for the problem again."[52]

101.    On March 11, 2019, another owner of a 2019 Honda CR-V bemoaned the need for three replacement batteries in a new vehicle: [53]

> Battery was dead on two occasions within the first 800 miles of ownership. Dealer replaced the battery under warranty and about 5 weeks later the same problem is back. Battery discharges after sitting unused for two days. Will be

---

[49] https://www.crvownersclub.com/threads/2017-crv-died-on-highway-almost-caused-an-accident-had-to-be-towed.196481/ (last accessed May 13, 2021).

[50] https://www.carcomplaints.com/Honda/CR-V/2019/engine/stalls_while_driving.shtml (last accessed May 13, 2021).

[51] https://www.carcomplaints.com/Honda/CR-V/2019/electrical/dead_battery.shtml (last accessed May 13, 2021).

[52] *Id*.

[53] *Id*.

calling the dealer for an appointment once the battery is charged and I can start the SUV.

Three dead batteries within the first 2 2/2 months of ownership. Have purchased a new battery charger and now carry a LI-ION battery starter in the vehicle. So much for Honda reliability; never again.

102.    A third owner recounted the extreme difficulties he encountered after purchasing a new 2019 Honda CR-V on February 14, 2019, as well as the health and safety risk it posed to him.[54] The owner complained that the parasitic draw Defect resulted in the depletion of his battery which "caused [him] to miss an out of town Dr.'s appointment." Over the course of the next two weeks, the owner experienced multiple incidents of failed batteries and brought his vehicle to a Honda dealership. Despite the dealership purporting to fix the issue, the vehicle was no more reliable. The owner lamented that he was unable to rely on his new vehicle to drive to other medical appointments and was forced to borrow other vehicles to get to his scheduled medical tests.[55]

103.    Similar complaints of the Defect were posted on *carcomplaints.com* for other Class Vehicles. On October 1, 2018, a 2018 Honda CR-V owner complained of having to replace the battery in his vehicle six times since purchasing the car in April of the same year. The owner noted that "[t]he mechanics at [his] local Honda dealership say they know it is a problem; however, there is nothing they can do about it except keep replacing our battery."[56]

104.    Upon information and belief, Honda monitors and responds to complaints posted on various consumer message boards, including on *CRVOwnersClub.com*.[57]

---

[54] *Id.*

[55] *Id.*

[56] https://www.carcomplaints.com/Honda/CR-V/2018/electrical/battery_drain.shtml (last accessed May 13, 2021).

[57] *See* https://www.crvownersclub.com/threads/2017-crv-battery-going-dead-overnight.135193/ (May 15, 2017 post by "Honda Automobile Customer Service[,] American Honda Motor Co., Inc." in response to a customer complaint concerning the Defect) (last accessed May 13, 2021).

105.    Upon information and belief, Honda's customer relations division regularly receive and respond directly to customer calls concerning, *inter alia*, product defects. Through these sources, Honda was made aware of the Defect and had knowledge of its danger.

106.    On information and belief, Honda's customer relations department, which interacts with authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, has received numerous reports of the parasitic draw Defect and premature wear on Class Vehicle batteries. Customer relations also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports prepared by engineers that have reviewed vehicles for which warranty coverage is requested, parts sales reports, and warranty claims data.

107.    Honda's warranty department similarly reviews and analyzes warranty data submitted by its dealerships and authorized technicians in order to identify defect trends in its vehicles.

108.    Honda dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in case Honda later determines to audit the dealership or otherwise verify the warranty repair.

109.    For their part, service centers are meticulous about providing this detailed information about in-warranty repairs to Honda because Honda will not pay the service centers for the repair if the complaint, cause, and correction are not sufficiently described.

110.    Upon information and belief, Honda knew or should have known about the Defect and risk of premature battery wear because of the high number of replacement parts and batteries likely ordered from Honda. All of Honda's service centers are required to order replacement parts, including batteries directly from Honda. Other independent vehicle repair shops that service Class Vehicles also order replacement parts directly from Honda.

111.    Honda routinely monitors part sales reports and are responsible for shipping parts requested by dealerships and technicians. Thus, Honda has detailed, accurate, and real-time data

CLASS ACTION COMPLAINT

regarding the number and frequency of replacement part orders. The increase in orders of batteries and other auto-parts necessary to fix damage caused by the parasitic draw Defect the Class Vehicles was known to Defendant and should have alerted it to the scope and severity of the Defect.

112.    Furthermore, the existence of the Defect in the Class Vehicles can hardly come as a surprise to Honda given prior model years of the Class Vehicle are known to experience similar parasitic draining issues.  There are many customer complaints filed with NHTSA prior to the sale of the Class Vehicles regarding parasitic draining issues found in prior versions of the Class Vehicle. Below are a few exemplar complaints:

- NHTSA ID No.: 10861766 (dated May 1, 2014) (2012 Honda CR-V owner complained "that the alternator was defective. the engine failed to start numerous times and the battery was replaced several times");

- NHTSA ID No.: 10862600 (dated May 2, 2016) (2014 Honda CR-V owner complained: "we have 4 instances where we have been unable to start the CRV because of a low battery problem" and that after the Honda dealership performed a software update to remedy the problem "the same sub standard condition reoccurred.");

- NHTSA ID No.: 10889192 (dated June 30, 2016) (2013 Honda Accord owner complained: "[T]he engine failed to start and the navigational system failed intermittently. The vehicle was taken to the dealer where it was diagnosed that the ignition electrical system caused the battery to drain…. The dealer replaced the battery and the starter assembly; however, the failure was not corrected. The vehicle failed to start and the navigational system continued to fail.");

- NHTSA ID No.: 10896148 (dated August 15, 2016) (2013 Honda CR-V owner complained: "On my 4th battery, they keep dying leaving us stranded. Software was updated by dealer there is a internal Honda memo how to resolve but it did not work…. Just today with a 15 month old battery it died and yet again the battery needed to be replaced. Only solution is to replace battery each year."); and

- NHTSA ID No.: 10908883 (dated September 23, 2016) (2014 Honda CR-V owner complained: "Every 14-15 days, I am having to get a jump because the car would not start. I had the battery checked and was told that there is not problem with the battery.").

113.    NHTSA complaints of parasitic draw issues in earlier model years Class Vehicles were corroborated by other customer complaints found on the internet. For example, on October

30, 2015, an owner of a 2012 Honda CR-V complained that she "has been going through batteries at an alarming rate. Every time I put a new one in, it dies within a few weeks and can't be made to hold a charge. This is a totally unacceptable problem to have in a vehicle that only has 20,000 miles on it! I have gone through 4 batteries and enough is enough. What is the problem and how can I prevent more batteries from biting the dust?"[58]

114.   Similarly, in February 2012, an owner of a 2012 Honda Accord complained on a popular car website, *Edmunds.com*, that his vehicle's battery was constantly draining without explanation: "Only 1600 miles, I sent my car to the dealer 2 times and jumping start 3 times already. They just told me everything is OK. Something is eating my battery power."[59]

115.   On October 21, 2013, an owner of a 2014 Honda CR-V reported on *carcomplaints.com* that his vehicle experienced the same issue: "Parked car at the airport for 16 days, returned and found battery dead. Would not turn over. Dealer said that is a common problem, they did not want to fix it. Returned again after the same issue, made them do a draw test and retested the battery."[60]

**F.  Honda acknowledges to its dealers that the Class Vehicles suffer from the Defect by issuing Service Bulletins, which it knew did not remedy the Defect.**

116.   The first public acknowledgment of the Defect found in a Class Vehicle occurred on February 22, 2017, when Honda filed am "Engineering Request for Investigation" with NHTSA. Therein, Honda stated that it "is investigating certain 2016-2017 Accord V6s with a customer complaint of a no-start condition that requires the 12V battery to be replaced. To fully understand the cause of this condition, [Honda] would like to collect specific parts from the

---

[58] https://www.yourmechanic.com/question/going-through-too-many-batteries (last accessed May 13, 2021).
[59] https://forums.edmunds.com/discussion/14504/honda/accord/2012-honda-civic-and-accord-battery-drain (last accessed May 13, 2021).
[60] https://www.carcomplaints.com/Honda/CR-V/2014/electrical/dead_battery.shtml (last accessed May 13, 2021).

vehicle prior to you attempting a repair of any kind."[61] Dealers were requested to contact Honda's TRS Group for further instructions.

117.    The following day, Honda issued a "Dealer Message" regarding the same.[62] Neither document identified the basis for Honda's decision to collect the vehicle batteries other than an unidentified number of customer complaints.

118.    On March 6, 16, and 27, 2017, and June 30, 2017, Honda issued additional "Dealer Message[s]" concerning "customer complaint[s] of a no-start condition that requires the 12V battery to be replaced" in 2016-2017 Accords. [63]

119.    Shortly after acknowledging an issue in the Accords, on March 10, 2017, Honda issued a "Tech Line Summary Article" notifying dealerships that it had conducted an "investigation" into 2017 CR-Vs being brought in for weak or dead batteries, yet the vehicles and battery "check out ok." [64] Honda stated that it "found that a software bug in the VSA [Vehicle Stability Assist] system may be keeping it awake when the ignition is turned to OFF. This can cause a 350 mA parasitic draw that may result in a weak or dead battery." Honda noted that it "found that this issue appears to happen only when a certain shut down procedure is done, and it's rare when it does." Although it acknowledged the issue, Honda did not have a "fix;" and

---

[61] NHTSA ID No.: 10108050, Manufacturer Communication Number: AER17020B, available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108050-9340.pdf.

[62] NHTSA ID No.: 10108052, Manufacturer Communication Number: APAS02232017901, available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108052-9340.pdf.

[63] March 6, 2017 (NHTSA ID No.: 10108266, Manufacturer Communication Number: APAS03062017901, available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108266-9340.pdf); March 16, 2017 (NHTSA ID No.: 10108293, Manufacturer Communication Number: APAS03162017901, available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108293-9340.pdf); March 27, 2017 (NHTSA ID No.: 10108331, Manufacturer Communication Number: APAS03272017901, available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108331-9340.pdf); June 30, 2017 (NHTSA ID No.: 10108299, Manufacturer Communication Number: APAS03222017901, available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108299-9340.pdf).

[64] NHTSA ID No.: 10108281, Manufacturer Communication Number: ATS170301, available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108281-9340.pdf

instead warned that "this parasitic draw can be avoided by setting the electric parking brake before turning the ignition to OFF."

120.    Next, on June 14, 2017, Honda issued Service Bulletin 17-032[65] which warned dealerships that 2017 CR-Vs "may have an intermittent 350mA current draw after the vehicle is shut off[,]" in which case "[t]he vehicle does not start due to a low battery." Honda stated that the "possible causes" for the parasitic draw was the vehicle's VSA modulator-control unit: "The VSA software logic may not allow the VSA modulator-control unit to shut down correctly and go into sleep mode after the vehicle is shut off. This can happen if the electronic parking brake (EPB) is applied within 3 to 4 seconds of the vehicle being shut off or if the EPB switch is held for a 3 to 4 second duration when the vehicle is off."   Honda's proposed "corrective action" was to "[u]pdate the VSA modulator-control unit, do the VSA sensor neutral position memorization (ALL SENSOR), set the tire pressures to the driver's door jamb label cold inflation values, and do the TPMS calibration procedure."

121.    On October 24, 2018, Honda announced that it had launched a battery collection program for 2017-2018 CR-Vs.[66] Honda's "Service Engineering" group sent a message to "Honda Dealers," instructing the Dealers to ship the batteries to Honda and to contact Honda's TRS Group for more information if the dealership "placed an OEM battery on a qualified vehicle."

122.    On March 29, 2019, Honda issued Service Bulletin 19-039, warning that 2019 CR-Vs may "fail[] to start after being parked for an extended period."[67] Honda explained that "[a]fter the vehicle is parked for an extended period, the PCM begins an evaporative system leak check

---

[65]  NHTSA ID No.: 10108868; available at https://static.nhtsa.gov/odi/tsbs/2017/MC-10108868-9999.pdf.

[66]  NHTSA ID No.: 10147183, Manufacturer Communication Number: APaS10242018901, available at https://static.nhtsa.gov/odi/tsbs/2018/MC-10147183-9999.pdf

[67]  NHTSA ID No.: 10156620, Manufacturer Communication Number: A19-039, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10156620-0001.pdf.

CLASS ACTION COMPLAINT

after meeting certain criteria. Under certain conditions, it may not return to sleep mode, causing the battery to discharge."

123.    Also on March 29, 2019, a Honda "Manager of Auto Campaigns and Recalls" issued a communication to dealers and "All Honda Sales, Service, & Parts Managers, and Personnel," "announcing a Product Update for certain 2019 CR-V vehicles to address a concern related to a possible low battery state of charge and/or no start after the vehicle has been parked."[68] Honda stated that the issue was related to "[t]he FI-ECU[, which] checks for EVAP leaks 5 hours after vehicle shutdown. Due to a programming error, this system may not go back into sleep mode afterwards. As a result, the battery may drain if this condition exists for an extended period of time." Honda acknowledged that the issue may necessitate a battery replacement.

124.    On April 16, 2019, Honda issued a communication to Honda Service Managers, that "[Honda] has been collecting batteries from [2018-2019 Accords and 2017-2018 CR-Vs] under certain conditions. If you have replaced an OEM battery on a qualified vehicle, please follow the procedure below."[69] Service Managers were instructed to ship the batteries to Honda and to contact Honda's TRS Group for more information if the dealership "placed an OEM battery on a qualified vehicle."

125.    On August 30, 2019, issued an Owner Notification Letter for 2019 CR-Vs, warning: "After the vehicle is parked for an extended period, the powertrain control module (PCM) begins an evaporative system leak check after meeting certain criteria. Under certain conditions, the PCM will not return to sleep mode, and may ultimately result in a dead battery. This is not an indication of a leak in the evaporative system."[70]

---

[68] NHTSA ID No.: 10156621, Manufacturer Communication Number: ABOM03292019, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10156621-0001.pdf.
[69] NHTSA ID No.: 10159033, Manufacturer Communication Number: APaS04162019903, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10159033-0001.pdf.
[70]NHTSA ID No.: 10164478, Manufacturer Communication Number: ONLO4G08302019, available at  https://static.nhtsa.gov/odi/tsbs/2019/MC-10164478-0002.pdf.

126.    On December 17, 2019, Honda issued an update for Service Bulletin 19-039 which expanded the number of 2019 CR-Vs subject to the bulletin.[71]

127.    Notably, Honda is aware that the Service Bulletins and proposed remedies are insufficient and fail to correct the parasitic draw Defect found the Class Vehicles. Even after the Service Bulletins were issued and dealers applied the "corrective action[s]" to the Class Vehicles, drivers continued to report incidents of parasitic draining.[72]

128.    Additionally, years before Honda issued Service Bulletins and battery collections for the Class Vehicles, Honda acknowledged the existence of parasitic draw issues in prior model years of the Class Vehicle.

129.    On September 1, 2011, Honda issued Service Bulletin A11090M for vehicle models "'98 and later models with A/C," including 2006-2007 Accords and 1998-2012 CR-Vs, warning that a defect in the A/C relay may cause parasitic draining.[73] Specifically, Honda warned that "[d]ead battery after parking for a short time or overnight" was "caused by the A/C compressor clutch relay contacts intermittently sticking closed…. If it sticks when you turn off the ignition with the compressor running, the compressor clutch keeps drawing battery power at a rate of 2 to 4 amps. That much parasitic draw discharges the battery in short order."

130.    On November 13, 2012, Honda issued a Service Bulletin, Service Bulletin 12-041, titled: *The Battery Is Dead and Needs Multiple Jump-Starts*.[74] Therein, Honda acknowledged that 2012 Civics and 2012 CR-Vs that "sat for at least two days" are prone to dead batteries, which require "multiple jump-starts to start the engine." Honda told its dealerships and technicians that the "probable cause" of the dead batteries was related to "[t]he vehicle's battery sensor monitors battery condition and the PCM [which] determines charging mode." Honda explained that

---

[71] NHTSA ID No.: 10169977, Manufacturer Communication Number: A19-039, available at https://static.nhtsa.gov/odi/tsbs/2019/MC-10169977-0001.pdf.

[72] *See, e.g.*, NHTSA ID Nos. 11187354, 11089119, 11191314, 11064100, 11089119.

[73] https://www.tsbsearch.com/Honda/A11090M (last accessed May 13, 2021).

[74] https://www.crvownersclub.com/attachments/sb-12-041-2-pdf.7783/ (last accessed May 13, 2021).

"[b]ased on the sulfation of the battery and customer driving habits the PCM may not select the correct charge mode." Honda further warned that "[a] jump-start should only be used to get the vehicle to a service station or dealer. It should not be used to fully charge the battery." The Service Bulletin instructed Honda mechanics to replace the battery "if necessary" and to update the PCM's software.

131.    Next, on March 19, 2014, Honda issued a Service Bulletin [75] which superseded Service Bulletin 12-041, issued on February 2, 2013. Therein, Honda states that the Service Bulletin "has been revised extensively." Again, the "corrective action" proposed was to update the PCM software, and that dealers should "[i]f necessary, replace the battery[.]" Honda further stated that the PCM not selecting the correct charge mode was the "possible cause" for the Defect remained unchanged.

132.    On July 23, 2014, Honda issued a subsequent Service Bulletin which superseded the March 19, 2014 Service Bulletin. This time, the Service Bulletin was expanded to include 2013-2014 Honda CR-Vs.[76] Honda's statement that the PCM not selecting the correct charge mode was the "possible cause" for the Defect remained unchanged.

133.    On November 8, 2014, Honda issued Service Bulletin 14-071,[77] which warned that "[i] some cases, because of the battery condition and the customer's driving habits, the PCM may not select the correct charge mode, resulting in a battery with a low state-of-charge. If the battery has a low state-of-charge, the engine may not start." This SB related to all 2012 CR-V models.

134.    Also on November 8, 2014, Honda issued a dealership communication warning that 2012 CR-V vehicles contained "issues with the battery management system."[78] Honda described

---

[75] Manufacturer Communication Number: A17-032; https://static.nhtsa.gov/odi/tsbs/2014/MC-10129492-9999.pdf
[76] NHTSA ID No.: 10128561; available at https://static.nhtsa.gov/odi/tsbs/2014/MC-10128561-9999.pdf.
[77] NHTSA ID No.: 10118181, available at https://static.nhtsa.gov/odi/tsbs/2014/MC-10118181-9999.pdf.
[78] NHTSA ID No.: 10118173, available at https://static.nhtsa.gov/odi/tsbs/2014/MC-10118173-9999.pdf.

the "problem": "The battery management system may misinterpret state-of-charge (SOC) information if the vehicle is left sitting for an extended period of time, which can cause the system to fail to charge the battery. If the condition persists, the SOC may fall below a level sufficient to start the engine."

**G. Honda breached the express warranties covering the Class Vehicles.**

135.  The Class Vehicles sold and leased by Honda included a written express warranty, which provides: "All new Honda vehicles are covered by a 3-Year/36,000-Mile New Vehicle Limited Warranty [.]"[79]

136.  Under the terms of the New Vehicle Limited Warranty, Honda is required to "repair or replace any part that is defective in material or workmanship under normal use."[80]

137.  Each Class Vehicle's original battery is included in the New Vehicle Limited Warranty.[81]

138.  The New Vehicle Limited Warranty period begins once "[t]he vehicle is delivered to the first purchaser by a Honda automobile dealer" or "[t]he vehicle is leased."

139.  Honda also includes a 100-month Replacement Battery Limited Warranty for batteries purchased from a Honda automobile dealer.[82] Under the Replacement Battery Limited Warranty, defective replacement batteries are to be replaced at no cost for the battery, labor, or installation during the first 36 months of service. For the remaining 64 months, the warranty provides for a sliding-scale credit towards the purchase of a replacement battery.

140.  Buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

---

[79] https://automobiles.honda.com/cr-v/warranty (last accessed May 13, 2021).

[80] https://owners.honda.com/Documentum/Warranty/Handbooks/2018_Honda_Warranty_Basebook_AWL05251_FINAL.pdf (last accessed May 13, 2021).

[81] *Id.*

[82] *Id.*

141.   Honda breached of these warranties by, *inter alia*, failing to repair or remedy the parasitic draw Defect in the Class Vehicles. Class Members complained to authorized Honda dealerships and technicians about the parasitic draw Defect but did not receive an adequate repair, breaching the express and implied warranties provided by Honda.

142.   Honda's attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Honda's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Honda's warranty periods were also unconscionable and inadequate to protect Plaintiff and other Class members. Among other things, Plaintiff and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Honda. A gross disparity in bargaining power existed between Honda and other Class members, and Honda knew of the Defect at the time of sale.

## FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS

143.   Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Honda responsible for making false and misleading statements regarding the Class Vehicles. Honda necessarily is in possession of all of this information. Plaintiff's claims arise out of Defendant's fraudulent omission/concealment of the Defect, despite their representations about the quality, reliability, and safety of the Class Vehicles.

144.   Plaintiff alleges that at all relevant times, including specifically at the time he and Class Members purchased their Class Vehicle, Honda knew, or was reckless in not knowing, of the Defect; Defendant had a duty to disclose the Defect based upon its exclusive knowledge; and Defendant never disclosed the Defect to Plaintiff or the public at any time or place in any manner other than inadequate Service Bulletins relating to the Class Vehicles.

145.    Plaintiff makes the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendant:

146.    **Who**: Honda actively concealed and omitted the Defect from Plaintiff and Class Members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Honda responsible for such decisions.

147.    **What**: Honda knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Defect, as alleged herein. Defendant concealed and omitted the Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

148.    **When**: Honda concealed and omitted material information regarding the Defect at all times while making representations about the safety and dependability of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Honda still has not disclosed the truth about the full scope of the Defect in the Class Vehicles. Honda has never taken any action to inform consumers about the true nature of the Defect in Class Vehicles. And when consumers brought their vehicles to Honda complaining of the Defect, Honda denied any knowledge of or an adequate repair for the Defect.

149.    **Where**: Honda concealed and omitted material information regarding the true nature of the Defect in every communication it had with Plaintiff and Class Members and made representations about the quality, reliability, and safety of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Defect in the Class Vehicles. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Honda's website. There are channels through which Honda could have disclosed the Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3)

direct communication to Class Members through means such as state vehicle registry lists and e-mail notifications.

150.   *How*: Honda concealed and omitted the Defect from Plaintiff and Class Members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Honda actively concealed and omitted the truth about the existence, scope, and nature of the Defect from Plaintiff and Class Members at all times, even though it knew about the Defect and knew that information about the Defect would be important to a reasonable consumer, and Honda promised in its marketing materials that Class Vehicles have qualities that they do not have.

151.   *Why*: Honda actively concealed and omitted material information about the Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, durability, and comfort of the Class Vehicles. Had Honda disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## TOLLING OF STATUTES OF LIMITATIONS

152.   Any applicable statute(s) of limitations have been tolled by Defendant's knowing and active concealment and denial of the facts alleged herein. Plaintiff and the members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced. Plaintiff's claim was thus tolled pursuant to the discovery rule and for fraudulent concealment.

### A.  Discovery Rule

153.   As shown by Plaintiff's experience alleged above, Class Members had no way of knowing about the parasitic draw Defect in their Class Vehicles. Defendant concealed its

knowledge of the Defect (as evidenced by the Service Bulletins, detailed above) while continuing to market and sell the Class Vehicles as safe, high-quality, and reliable vehicles.

154.    Within any applicable statutes of limitation, Class Members could not have discovered through the exercise of reasonable diligence that Honda was concealing the conduct complained of herein and misrepresenting the true qualities of the Class Vehicles. As detailed above, Class Members acted reasonably and diligently in attempting to find the source of their electrical and battery-related vehicle issues.

155.    Class Members did not know facts that would have caused a reasonable person to suspect that there was a parasitic draw Defect affecting their vehicle's battery and an ordinary person would be unable to appreciate that the vehicle was defective.

156.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

**B.  Fraudulent Concealment**

157.    Defendant was under a continuous duty to disclose to Class Members the existence of the parasitic draw Defect found in the Class Vehicles.

158.    Defendant recklessly disregarded the true nature, quality, and character of the Class Vehicles, by failing to disclose the existence of the parasitic draw Defect.

159.    Due to Defendant's concealment throughout the time period relevant to this action (as evidenced by the Service Bulletins, detailed above), all applicable statutes of limitation have been tolled.

160.    Instead of publicly disclosing the parasitic draw Defect in the Class Vehicles, Defendant kept owners and lessees in the dark about the failure in their electrical systems, most notably the repeated battery failures, as well as other related electrical issues as described herein.

161.    As shown by Plaintiff's experience alleged above, Class Members were not at fault for failing to discover the connection between the parasitic draw Defect and their electrical and battery-related vehicle issues. Until Plaintiff learned of systemic battery issues in the Class Vehicles on February 24, 2021, Plaintiff had no actual or presumptive knowledge of facts

sufficient to put him on inquiry notice of such a connection. This ignorance of the true cause of the electrical and battery related vehicle issues is common across Plaintiff and each Class member.

## CLASS ALLEGATIONS

162.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

163.    Plaintiff seeks to represent a class ("Nationwide Class") defined as:

> All persons in the United States and its territories who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

164.    In addition, and in the alternative to the above, Plaintiff seeks to represent a class ("Iowa Class") defined as:

> All persons in the State of Iowa who are current or former owners and/or lessees of a Honda CR-V (model years 2017-2019) or Honda Accord (model years 2016-2019).

165.    Excluded from the Nationwide Class and the Iowa Class (together, "Classes") are Honda, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Classes definition based on discovery and further investigation.

166.    <u>Numerosity</u>: Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that at least two million Class Vehicles have been sold and leased in the United States.

167.   <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a.   Whether Defendant engaged in the conduct alleged herein;

    b.   Whether Defendant advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

    c.   Whether the Class Vehicles were sold with a defect;

    d.   Whether Defendant knew of the parasitic draw Defect but failed to disclose the problem and its consequences to their customers;

    e.   Whether a reasonable consumer would consider the parasitic draw Defect or its consequences to be material;

    f.   When Defendant discovered the parasitic draw Defect in the Class Vehicles, and what, if anything, it did in response;

    g.   Whether Defendant should be required to fully disclose the existence of the parasitic draw Defect;

    h.   Whether Defendant breached its express and/or implied warranties with respect to the Class Vehicles;

    i.   Whether Defendant's conduct violates the California Legal Remedies Act, California Unfair Competition Law, and the other statutes asserted herein;

    j.   Whether Plaintiff and Class Members overpaid for their Class Vehicles; and

    k.   Whether Plaintiff and Class Members experienced out-of-pocket losses as a result of the Defect, and if so, how much.

168.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Classes because Plaintiff purchased a Class Vehicle with the same Defect as did each member of the Classes. Furthermore, Plaintiff and all Members of the Classes sustained monetary and economic injuries

including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class Members.

169.    Adequacy: Plaintiff is an adequate representative because his interests do not conflict with the interests of the Classes that he seeks to represent, he has retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

170.    Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and Members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for Members of the Classes individually to redress effectively the wrongs done to them. Even if the Members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

171.    Declaratory and Injunctive Relief. Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Nationwide Class and Iowa Class Members as a whole.

172.    Defendant has acted, and refused to act, on grounds generally applicable to the

Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**(Cal. Civ. Code § 1750, *et seq*.)**
**(Brought on behalf of the Nationwide Class)**

173.   Plaintiff incorporates by reference each allegation as if fully set forth herein.

174.   Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class.

175.   On information and belief: (1) the decisions of Honda concerning the advertising, marketing and warranty policies and procedures emanate from Honda's headquarters in Torrance, California; (2) Honda's decisions on how to present Class Vehicles in advertising in the United States emanate from its headquarters in Torrance, California; (3) decisions as to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's headquarters in Torrance, California; and (4) the relevant personnel from Honda work in Honda's headquarters in Torrance, California or coordinate and make decisions concerning the above through facilities and other personnel in Torrance, California. For these reasons, Plaintiff and the Class' claims emanate from Honda's actions in California and it is appropriate for Honda to be held to comply with California law on a nationwide basis.

176.   Defendant is a person as that term is defined in California Civil Code 5 § 1761(c).

177.   Plaintiff and the Class Members are "consumers" as that term is defined in California Civil Code §1761(d).

178.   Honda engaged in unfair and deceptive acts in violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*., by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class Members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of

the CLRA:

    a.   (a)(2)  Misrepresenting the source, sponsorship, approval or certification of goods or services;

    b.   (a)(5)  Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

    c.   (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

    d.   (a)(9) Advertising goods and services with the intent not to sell them as advertised.

179.    Honda's unfair or deceptive acts or practices occurred repeatedly in Honda's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

180.    Honda knew that the Class Vehicles were defectively designed or manufactured, would prematurely fail to perform their essential function, and were not suitable for their intended use.

181.    Honda was under a duty to Plaintiff and the Class Members to disclose the defective nature of the Class Vehicles and the existence of the parasitic draining Defect because:

    a.   Defendant was in a superior position to know the true state of facts about the parasitic draining Defect and associated repair costs in the Class Vehicles;

    b.   Plaintiff and the Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had a parasitic draining Defect until manifestation of the Defect;

    c.   Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn or discover the parasitic draining Defect and the associated repair costs that it causes until the manifestation of the Defect; and

    d.   Defendant actively concealed the parasitic draining Defect and the associated repair costs by knowingly failing to recall Class Vehicles.

182.    In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendant has knowingly and intentionally concealed material facts and breached its duty to disclose.

183.    The facts concealed or not disclosed by Honda to Plaintiff and the Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendant's Class Vehicles or pay a lesser price. Had Plaintiff and the Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

184.    On or about May 13, 2021, Plaintiff, through undersigned counsel, provided Honda with notice of its violations of the CLRA.

185.    Plaintiff and Class Members' injuries were proximately caused by Honda's fraudulent and deceptive business practices.

186.    Plaintiff and the Class members seek equitable relief, and will amend this claim to seek damages after the notice period.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA UNFAIR BUSINESS PRACTICES ACT**
**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**
**(Brought on behalf of the Nationwide Class)**

187.    Plaintiff incorporates by reference each allegation as if fully set forth herein.

188.    Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class.

189.    On information and belief: (1) the decisions of Honda concerning the advertising, marketing and warranty policies and procedures emanate from Honda's headquarters in Torrance, California; (2) Honda's decisions on how to present Class Vehicles in advertising in the United States emanate from its headquarters in Torrance, California; (3) decisions as to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's headquarters in Torrance, California; and (4) the relevant personnel from Honda work in Honda's headquarters in Torrance, California or coordinate and make decisions

concerning the above through facilities and other personnel in Torrance, California. For these reasons, Plaintiff and the Class' claims emanate from Honda's actions in California and it is appropriate for Honda to be held to comply with California law on a nationwide basis.

190.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising."

191.    Honda's conduct, as described herein, was and is in violation of the UCL. Honda's conduct violates the UCL in at least the following five ways: (i) failing to disclose the existence of the parasitic draining defect in the Class Vehicles; (ii) marketing and promoting the Class Vehicles as being free from defect, including the parasitic draining defect which causes the Class Vehicles to fail to perform their essential function and creates safety risks; (iii) knowingly and intentionally concealing the existence of the Defect in the Class Vehicles; (iv) violating California laws, including the CLRA; and (v) breaching its express and implied warranties.

192.    Honda intentionally and knowingly misrepresented and omitted material facts regarding the Class Vehicles with intent to mislead Plaintiff and the other Class members.

193.    In purchasing or leasing the Class Vehicles, Plaintiff and the other Class members were deceived by Honda's failure to disclose the parasitic draw Defect found in the Class Vehicles.

194.    Plaintiff and the other Class members reasonably relied upon Honda's false misrepresentations and omissions. They had no way of knowing that Honda's representations were false, misleading, and incomplete. As alleged herein, Honda engaged in a pattern of deception and public silence in the face of a known parasitic draining defect in the Class Vehicles. Plaintiff and the other Class members did not, and could not, unravel Honda's deception on their own.

195.    Honda knew or should have known that its conduct violated the UCL.

196.    Honda owed Plaintiff and the other Class members a duty to disclose the truth about the parasitic draw Defect because the Defect created a safety hazard and Honda: (i) possessed

exclusive knowledge of the Defect; (ii) intentionally concealed the Defect from Plaintiff and the Class; and/or made incomplete representations by failing to warn the public or to recall the Class Vehicles due to the Defect.

197.    Honda had a duty to disclose that the existence of the Defect in the Class Vehicles, because Plaintiff and the other Class members relied on Honda's material misrepresentations and omissions.

198.    Honda's conduct proximately caused injuries to Plaintiff and the other Class members that purchased or leased the Class Vehicles and suffered harm as alleged herein.

199.    Plaintiff and the other Class members were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of Honda's conduct in that Plaintiff and the other Class members incurred costs related the parasitic drain caused by the Defect, including replacement of electrical components and service costs, and overpaid for their Class Vehicles that have suffered a diminution in value.

200.    Honda's violations cause continuing injuries to Plaintiff and Class members because Honda has failed to issue an adequate remedy for the Defect found in each Class Vehicle. Honda's unlawful acts and practices complained of herein affect the public interest.

201.    Honda's misrepresentations and omissions alleged herein caused Plaintiff and the other Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these vehicles, would not have purchased or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not suffer from the parasitic draw Defect and failed to live up to industry standards.

202.    Accordingly, Plaintiff and the other Class members have suffered injury-in-fact, including lost money or property, as a result of Honda's misrepresentations and omissions.

203.    Plaintiff requests that this Court enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendant, and order restitutionary disgorgement of all monies and revenues

generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(Cal. Comm. Code §§ 2313, 10210)**
**(Brought on behalf of the Nationwide Class)**

204.    Plaintiff incorporates by reference each allegation as if fully set forth herein.

205.    Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class.

206.    Honda is a merchant, seller, and lessor of motor vehicles within the meaning of Cal. Com. Code § 2104.

207.    On information and belief: (1) the decisions of Honda concerning the advertising, marketing and warranty policies and procedures emanate from Honda's headquarters in

Torrance, California; (2) Honda's decisions on how to present Class Vehicles in advertising in the United States emanate from its headquarters in Torrance, California; (3) decisions as to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's headquarters in Torrance, California; and (4) the relevant personnel from Honda work in Honda's headquarters in Torrance, California or coordinate and make decisions concerning the above through facilities and other personnel in Torrance, California. For these reasons, Plaintiff and the Class' claims emanate from Honda's actions in California, and thus, the application of California extraterritorially in this case is appropriate.

208.    Pursuant Cal. Com. Code § 2313 (a)(1), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

209.    Pursuant Cal. Com. Code § 10210(a)(1), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

57

CLASS ACTION COMPLAINT

210.    The Class Vehicles are goods within the meaning of the Uniform Commercial Code and relevant state law.

211.    Honda provided all purchasers and lessees of the Class Vehicles with the express warranties described above in paragraphs 135-140.

212.    In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

213.    Honda's written express warranties formed the basis of the bargain that was reached when Plaintiff and the other Class Members purchased or leased their Class Vehicles.

214.    Honda breached the express warranties through the acts and omissions described above.

215.    Plaintiff and the other Class Members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's express warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class Members relied on statements made by Defendant itself in choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

216.    Plaintiff notified Honda of the parasitic draw Defect in the Class Vehicles when he brought it in to a dealer after his Class Vehicle failed due to the parasitic draw Defect. Honda knew that it was unable to provide adequate remedy under the warranty. Honda was also provided notice of the parasitic draw Defect through numerous complaints filed against it directly and

through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

217.   Further, Honda has refused to provide an adequate warranty repair for the parasitic draw Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair, as Plaintiff has, due to the parasitic draw Defect have been denied adequate repairs.

218.   The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Honda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

219.   Accordingly, recovery by Plaintiff and the other Class Members is not limited to the limited remedy of repair, and Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

220.   Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class Members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

221.   Honda had notice of its breach as alleged herein.

222.   As a direct and proximate result of Honda's breach of its express warranty, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Cal. Comm. Code §§ 2314, 10212)**
**(Brought on behalf of the Nationwide Class)**

223.   Plaintiff incorporates by reference each allegation as if fully set forth herein.

224.   Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class.

225.    Honda is a merchant, seller, and lessor of motor vehicles within the meaning of Cal. Com. Code § 2104.

226.    On information and belief: (1) the decisions of Honda concerning the advertising, marketing and warranty policies and procedures emanate from Honda's headquarters in Torrance, California; (2) Honda's decisions on how to present Class Vehicles in advertising in the United States emanate from its headquarters in Torrance, California; (3) decisions as to recalls, services bulletins, and whether to make warranty repairs all emanate from Honda's headquarters in Torrance, California; and (4) the relevant personnel from Honda work in Honda's headquarters in Torrance, California or coordinate and make decisions concerning the above through facilities and other personnel in Torrance, California. For these reasons, Plaintiff and the Class' claims emanate from Honda's actions in California, and thus, the application of California extraterritorially in this case is appropriate.

227.    Pursuant to Cal. Com. Code § 2314(1) "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Goods are merchantable if they are "fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any." § Cal. Com. Code § 2314(2)(c),(f).

228.    Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased.

229.    Defendant provided Plaintiff and the other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffered from the parasitic draw Defect at the time of sale that causes various safety features to fail without warning, creates the undue risk of the engine stalling while driving, and results in the premature depletion of batteries and alternators. Therefore, the Class

Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

230.     Defendant impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles were manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for providing transportation and would not result in the premature failure of its batteries.

231.     Contrary to the applicable implied warranties, the Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class Members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

232.     Defendant knew or had reason to know of these material facts, and wrongfully and fraudulently concealed these material facts from Plaintiff and the Class. Defendant was provided notice of these issues by, *inter alia*, complaints lodged by consumers with NHTSA—which Defendant routinely monitors—before or within a reasonable amount of time after the allegations of the Defect became public.

233.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

234.     Plaintiff and the other Class Members have had sufficient direct dealings with either Defendant or its agents (*e.g.*, dealerships, consumer affairs departments, and technical support) to establish privity of contract between Defendant on one hand, and Plaintiff and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class Members are intended third-party beneficiaries of contracts between Defendant and their dealers, and specifically, of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only. Additionally, privity is excused here because Plaintiff and each of the other Class Members relied on statements made by Defendant itself in

choosing to purchase or lease a Class Vehicle. As alleged herein, the marketing of the Class Vehicles was uniform, and was controlled and disseminated directly by Defendant.

235.    Plaintiff, on behalf of himself and the Class, seeks monetary damages, treble damages, costs, attorneys' fees, and such other and further relief provided by law and equity.

## FIFTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Brought on behalf of the Nationwide Class, or Alternatively, the Iowa Class)

236.    Plaintiff incorporates by reference each allegation as if fully set forth herein.

237.    Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class, or alternatively, the Iowa Class (the "Class" for purposes of this Count).

238.    At all times relevant hereto, Defendant designed, manufactured, produced, distributed, marketed, and/or sold the Class Vehicles.

239.    Plaintiff and members of the Class conferred non-gratuitous benefits upon Defendant, without knowledge that the Class Vehicles contained the Defect.

240.    Defendant appreciated, or had knowledge of, the non-gratuitous benefits conferred upon them by Plaintiff and members of the Class.

241.    Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendant's unconscionable wrongdoing, Plaintiff and members of the Class were not receiving product of high quality, nature, fitness or value that had been represented by Defendant and reasonable consumers would have expected.

242.    Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable.

243.    Because Defendant's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and hereby seek disgorgement and restitution of Defendant's wrongful profits, revenue, and

benefits in a manner established by the Court.

### SIXTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
### (Iowa Code §§ 554.2313, 554.13210)
### (Brought on behalf of the Iowa Class)

244.    Plaintiff incorporates by reference each allegation as if fully set forth herein.

245.    Plaintiff brings this claim individually and on behalf of the other members of the Iowa Class.

246.    Honda is a "merchant" (as defined by Iowa Code § 554.2104(1)), a "seller" (as defined by Iowa Code § 554.2103(1)(d)), and a "lessor" (as defined by Iowa Code § 554. 13103(p)) of Class Vehicles.

247.    The Class Vehicles are "goods" (as defined by Iowa Code §§ 554.2105(1), 554.13103(1)(h)).

248.    Pursuant to Iowa Code § 554.2313(1)(a), "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

249.    Pursuant  to Iowa Code § 554.13210 (1)(a), "[a]ny affirmation of fact or promise made by the lessor to the lessee which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise."

250.    In its written express warranties, Honda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

251.    Honda's written express warranties formed the basis of the bargain that was reached when Plaintiff and the other Class Members purchased or leased their Class Vehicles.

252.    Honda breached its express  warranty to repair defective parts in the Class Vehicles. Honda admittedly has not repaired the Class Vehicles' parasitic draw Defect.

253.    Plaintiff notified Honda of the parasitic draw Defect in the Class Vehicles when he brought it in to a dealer after his Class Vehicle failed due to the parasitic draw Defect. Honda

knew that it was unable to provide adequate remedy under the warranty. Honda was also provided notice of the parasitic draw Defect through numerous complaints filed against it directly and through its dealers, as well as its own internal engineering knowledge. Honda has not remedied its breach.

254. Further, Honda has refused to provide an adequate warranty repair for the parasitic draw Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair, as Plaintiff has, due to the parasitic draw Defect have been denied adequate repairs.

255. The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Honda has failed and/or has refused to adequately provide effective remedies within a reasonable time.

256. Accordingly, recovery by Plaintiff and the other Class Members is not limited to the limited remedy of repair, and Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

257. Also, as alleged in more detail herein, at the time that Honda warranted and sold or leased the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Honda improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class Members were therefore induced to purchase or lease the Class Vehicles under false pretenses.

258. Honda had notice of its breach as alleged herein.

259. As a direct and proximate result of Honda's breach of its express warranty, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE IOWA PRIVATE RIGHT OF ACTION**
**FOR CONSUMER FRAUDS ACT**
**(Iowa Code § 714H)**
**(Brought on behalf of the Iowa Class)**

260. Plaintiff incorporates by reference each allegation as if fully set forth herein.

261.    Plaintiff brings this claim individually and on behalf of the other members of the Iowa Class.

262.    The Iowa "Private Right of Action for Consumer Frauds Act" prohibits unfair and deceptive trade practices in the sale, lease, or advertisement of a product or service, and in the solicitation of charitable contributions. The Act's purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection.

263.    Specifically, Plaintiff alleges that Honda has violated the Iowa "Private Right of Action for Consumer Frauds Act" by engaging in the unfair and/or deceptive acts and practices set forth within the Act. Honda knew prior to the sale or lease of the Class Vehicles, that the Class Vehicles suffered from an inherent defect, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use. Honda's unfair and deceptive business practices in carrying out the marketing program described above were and are intended to and did and do result in the purchase of Honda's products by consumers, including Plaintiff, in violation of the Iowa "Private Right of Action for Consumer Frauds Act."

264.    Plaintiff's right as a consumer to bring this action at law derives from the Iowa "Private Right of Action for Consumer Frauds Act," 714H. The Iowa legislature enacted the Iowa "Private Right of Action for Consumer Frauds Act" to allow Iowa consumers who have been victimized by an unfair or deceptive trade business practice to obtain damages and other such equitable relief as the Court deems necessary to protect the public from further violations.

265.    As a result of Honda's unfair and/or deceptive business practices, Plaintiff and all purchasers of Honda's products have lost money in that they paid for products that did not have the benefit as represented. Plaintiff seeks and is entitled to an order enjoining Honda from continuing to engage in the unfair and deceptive business practices alleged herein.

266.    Plaintiff and his counsel have sought and have obtained the approval to bring this claim pursuant to §714H.7.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class, respectfully requests that this Court:

a. Certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's counsel as Class Counsel;

b. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiff and Class Members with appropriate curative notice regarding the existence and cause of the Defect;

c. Award Plaintiff and Class Members actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

d. Award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

e. Award pre- and post-judgment interest at the maximum legal rate; and

f. Grant all such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all claims so triable.

CLASS ACTION COMPLAINT

Dated:  May 18, 2021                    By:  /s/ J. Barton Goplerud
                                        J. Barton Goplerud
                                        SHINDLER, ANDERSON, GOPLERUD &
                                        WEESE, PC
                                        5015 Grand Ridge Drive, Suite 100
                                        West Des Moines, IA  50265
                                        Telephone:      515/223-4567
                                        Fax:            515/223-8887
                                        goplerud@sagwlaw.com

                                        Elizabeth A. Fegan (*pro hac vice* to be filed)
                                        FEGAN SCOTT LLC
                                        150 S. Wacker Drive, 4th Floor
                                        Chicago, IL  60606
                                        Telephone:      312/741-1019
                                        Fax:            312/264-0100
                                        beth@feganscott.com

                                        Jonathan D. Lindenfeld (*pro hac vice* to be
                                        filed)
                                        FEGAN SCOTT LLC
                                        140 Broadway, 46th Floor
                                        New York, NY  10005
                                        Telephone:      332/216-2101
                                        Fax:            917/725-9346 (fax)
                                        jonathan@feganscott.com

                                        *Attorneys for Plaintiff and Proposed Class
                                        Counsel*

CLASS ACTION COMPLAINT